**THE HONORABLE MARSHA J. PECHMAN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THAN ORN, individually, THALISA ORN, individually, J.O. and C.O., by their Guardian, CLARISSE ORN,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF TACOMA, a municipal corporation; and KRISTOPHER CLARK, in his individual capacity,<br><br>Defendants. | CASE NO. 3:13-cv-05974-MJP<br><br>PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE<br><br>NOTE ON MOTION CALENDAR: FRIDAY, OCTOBER 30, 2020 |



## I. INTRODUCTION AND RELIEF REQUESTED

On April 3, 2018, Judge Ronald B. Leighton entered an Order on Plaintiffs' and Tacoma Defendants' Motions *in Limine*. Dkt. 123. Following the reassignment of this case to the present Court, parties stipulated to a revised date to file supplemental motions *in limine*. In accord with Fed. R. Evid. 104(a), Plaintiffs respectfully request that the Court enter orders *in limine* that instruct the defendants, their attorneys, and witnesses not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner, directly or indirectly, any irrelevant or otherwise inadmissible matter, including those set forth below. Plaintiffs certify that they have met and conferred with Defendants regarding these motions *in limine* in compliance with Local Rule 7(d)(4). On information and belief, Plaintiffs have the understanding that Motions Nos. 6 and 10 are not contested by Defendants.

**1. Defendants should be precluded from arguing that the amount of law enforcement vehicles that responded was because of the danger Plaintiff posed or, in the alternative, the Court should reconsider the prior order granting Defendants' Motion in Limine regarding Corey Thomas.**

The Court should preclude Defendants from arguing that the amount of law enforcement vehicles that responded to Tacoma Police Department's (hereinafter "TPD") Alan Morris's report of a failure to yield was because of the level of danger Plaintiff Than Orn posed to either himself, law enforcement, or the public. Such an argument or even the inference thereof would be highly misleading to a jury where the jury would be prevented from considering the fact that Morris initially believed that the individual he was pursuing was Corey Thomas, an individual whom Morris had several prior encounters with and whom Morris described as posing a risk to the safety of officers in the past.

The CAD report from October 12, 2011, notes that at 8:35:08pm, Morris called out that the driver of the vehicle he was following "may be Corey Thomas." In the 911 Transmission

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 1 | CASE NO. 3:13-cv-05974-MJP

**PFAU COCHRAN VERTETIS AMALA**
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Transcript of police radio traffic from the night of the shooting, Morris called out, "I hope it ain't Corey Thomas, but it might be."[1] It was not until a mile and a half into following Mr. Orn that Morris pulled alongside Mr. Orn's vehicle to confirm whether the driver was Thomas.[2] Morris testified that he was able to distinguish whether the driver was Thomas because he was "a well-known entity in the city," who Morris had several encounters with previously. *Id.*

TPD officer Kristopher Clark, who ultimately shot Mr. Orn, confirmed that Thomas was a very well-known entity to the TPD and had been placed on officer safety bulletins which are notices to TPD officers that particular individuals pose a potential threat to officers.[3] Clark testified that he heard Morris initially called out over the radio that the suspect was Thomas before subsequently advising that the suspect was not Thomas.[4]

Judge Ronald Leighton had previously granted Defendants' Motion in Limine No. 3, precluding any reference to Corey Thomas. Defendants should not be able to use this ruling as both a sword and shield in the upcoming trial. The argument or inference that the reason twenty-two vehicles responded was because of the threat that Mr. Orn posed is highly misleading without the jury receiving the full context behind the cause of such a response. Alternatively, should Defendants make such an inference during trial, Plaintiffs respectfully request that the Court reconsider the order granting Defendants' Motion in Limine No. 3 and allow Plaintiffs the ability to elicit testimony about Thomas. Plaintiffs should be entitled to present such context in order to provide the jury with an understanding of the totality of the circumstances and the reasonableness surrounding the immense response by law enforcement

---

[1] Cochran Dec., Ex. A (911 Transmission Transcript, at 2:25).

[2] Cochran Dec., Ex. B, at 146:11-147:21 (Criminal Trial Transcript of Morris).

[3] Cochran Dec., Ex. C, at 241:10-16 (Criminal Trial Transcript of Clark).

[4] *Id.*, at 304:5-13.

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 2 | CASE NO. 3:13-cv-05974-MJP

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to Morris's report of a failure to yield. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

**2. Defendants should be precluded from making any reference, comment, or argument about Mr. Orn committing felony crimes for which he was found not guilty.**

The court should preclude Defendants and all witnesses from referencing, commenting on, or arguing about Mr. Orn committing felony crimes on the night of the shooting for which he was found not guilty in a completed adjudication, including assault and attempting to elude police vehicles. The court should also prelude Defendants and all witnesses from describing TPD officer attempts to stop Mr. Orn's motor vehicle on the night of October 12, 2011, the night of the shooting, as a "felony stop" and from using other descriptors of Mr. Orn's behavior which lead to an inference that Mr. Orn committed a felony. In deposition testimony and in their testimony during Mr. Orn's criminal trial proceedings related to the shooting, multiple TPD officers identified the type of stop they were attempting to use to stop Mr. Orn as a "felony stop" and describe Mr. Orn's behavior using terms which lead to an inference that Mr. Orn committed a felony on the night of the shooting. The Defendants and witnesses should be precluded from using this prejudicial terminology under FRE 403.

Under the rules of evidence, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

Any reference to Mr. Orn committing the felony crime of assault or attempting to elude police vehicles, as well as to the term "felony stop" or other descriptors that lead to an inference that Mr. Orn committed a felony on the night of the shooting, should be excluded under FRE

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 3 | CASE NO. 3:13-cv-05974-MJP



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

403 because the probative value of such description is substantially outweighed by the risk of unfair prejudice and that the jury will be misled by the terms.  Because Mr. Orn has never been convicted of any felony as a result of the events occurring on the night of the shooting, referring to Mr. Orn's behavior on the night of the shooting as constituting the felonies of assault or attempting to elude police vehicles, and the use of the term "felony stop" or other descriptors that lead to an inference that Mr. Orn committed a felony on the night of the shooting is improper and poses a substantial risk of unfairly and improperly misleading the jury into believing that Mr. Orn was found by a jury to have engaged in the commission of a felony on the night of the shooting.  Indeed, while TPD officers recommended and actively participated in the prosecution of felony charges of assault and attempting to elude police vehicles against Mr. Orn, a jury acquitted him of such charges.  Defendants and TPD personnel do not possess the authority to override that determination.  Any references to Mr. Orn's behavior on the night of the shooting as constituting the felonies of assault or attempting to elude police vehicles, as well as references to the term "felony stop" or other similar descriptors of Mr. Orn's behavior are of, at best, minimal probative value as descriptors of Mr. Orn's behavior and of the methods TPD officers used to attempt to stop Mr. Orn's vehicle on the night of the shooting.  The term "felony stop" in particular provides no description of the techniques applied by TPD officers to stop a suspect.  The Defendants can describe the methods that TPD officers used to attempt to stop Mr. Orn without identifying those methods as a "felony stop."  Defendants should be barred from referencing, commenting, or arguing about Mr. Orn committing felony crimes and from using the term "felony stop" or any other descriptors that lead to an inference that Mr. Orn committed a felony, which pose the risk of unfairly and improperly misleading the jury into believing that Mr. Orn was engaged in the commission of a felony on the night of the shooting.



**3. Defendants should be precluded from referencing or arguing that Than Orn apologized to Detective Miller during his interview the day after the shooting.**

Defendants and witnesses should be precluded, under FRE 402 and 403, from referencing, commenting on, eliciting testimony about, or arguing about Mr. Orn apologizing to TPD's Gene Miller during Miller's interview with Mr. Orn the day after the shooting. The apology in question is described in Miller's interview notes as follows:

> I asked Orn if there was anything else he wanted to tell us about the incident or anything else he believed we needed to know and he said there was not. I thanked him for his time and he responded, "I'm sorry". Orn was cooperative throughout the interview process. I again thanked him for his time and that concluded our contact with him.[5]

The context of this apology is in response to Miller asking Mr. Orn if there was any additional information he needed to know about the shooting, and Mr. Orn indicating that he did not have any additional information to provide. Given this context, it would be misleading and unfairly prejudicial for Defendants to be permitted to reference this apology and to argue that it implies anything about Mr. Orn's behavior or actions on the night of the shooting. Indeed, the apology is not probative of Mr. Orn's behavior or actions on the night of the shooting in any way because Mr. Orn never explained that the apology was in reference to his behavior or actions on the night of the shooting, as opposed to not having any additional information to provide to Miller. Furthermore, without any supporting context connecting the apology to Mr. Orn's behavior or actions on the night of the shooting, the apology does not tend to prove or disprove any fact of consequence in this matter, is irrelevant and should therefore be excluded under FRE 402. Even if it was somehow relevant, the apology should still be

---

[5] See Cochran Dec., Ex. D, at 5 (Tacoma Police Dept. Supplemental Report Incident No. 112851184.37).

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 5 | CASE NO. 3:13-cv-05974-MJP



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

excluded under FRE 403 because the risk of misleading the jury and unfairly prejudicing the plaintiffs substantially outweighs the apology's probative value.

**4.    Defendants should be precluded from referencing or presenting argument about the fingerprint analysis conducted by TPD personnel on Mr. Orn's vehicle.**

Defendants and witnesses should be precluded, under FRE 402 and 403 from referencing or presenting argument regarding TPD's discovery of fingerprints, and subsequent analysis thereof, on the passenger side of the front of the vehicle Mr. Orn drove on the night of the shooting. The Defendants will seek to argue that these fingerprints support Defendant Kristopher Clark's narrative of events occurring on the night of the shooting, even though TPD personnel concluded that none of the prints could be matched to Clark. Because none of the fingerprints located and analyzed by TPD personnel could be attributed to Clark, the fingerprints, and their discovery and analysis by TPD, are not relevant to any fact of consequence in this matter and pose a substantial risk of misleading the jury if presented.

Under FRE 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Only evidence which is relevant is admissible, while irrelevant evidence is not admissible. FRE 402.

Here, the presence of fingerprints on the front passenger side of Mr. Orn's vehicle that could not be attributed to Clark does not have any tendency to prove any fact of consequence in this action. Because the prints could not be attributed to Clark, their discovery and analysis is simply not probative of whether Clark ever touched Mr. Orn's vehicle. Furthermore, there is a substantial risk that the jury will be confused or misled by the presentation of any evidence regarding the discovery and analysis of fingerprints on Mr. Orn's vehicle. Therefore, the court

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 6 | CASE NO. 3:13-cv-05974-MJP



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

should preclude reference to or argument about TPD personnel's discovery and analysis of fingerprints on the front of Mr. Orn's vehicle.

**5.  Defendants should be precluded from eliciting improperly speculative opinion testimony from lay witnesses regarding the risk Orn posed to non-TPD personnel on the night of the shooting.**

The court should preclude lay witnesses, under FRE 701 and 602, from providing improper speculative opinion testimony regarding the risk Mr. Orn's driving posed to non-TPD personnel on the night of the shooting.

All lay witnesses must have personal knowledge of matters about which they testify. FRE 602. Opinion testimony by lay witnesses is therefore limited to opinions that are: (1) rationally based on the witness's perception, (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge within the scope of FRE 702.  FRE 701.  Therefore, lay witnesses may not offer testimony in the form of opinions or conclusions that are speculative.  *See Hund-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 928 (9th Cir. 1980).

 No officer involved in the incidents leading up to and including the shooting saw any non-TPD personnel pedestrians in Mr. Orn's path at any time.  Furthermore, Morris reported on the night of the shooting that when Mr. Orn encountered traffic along his route to his apartment he slowed for the traffic, that he stopped at red lights, that his speed was slow or moderate, and that he may even have turned his lights on after Morris first saw him.[6]  No officer directly observed Mr. Orn's vehicle pose a risk to any non-TPD vehicles while Mr. Orn drove to the Valley Vista Apartments parking lot.  Therefore, any testimony elicited from any TPD

---

[6] Cochran Dec., Ex. E, at 5-7 (TPD Interview of Sergeant Alan Morris).

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 7 | CASE NO. 3:13-cv-05974-MJP

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

officers to the effect that Mr. Orn's driving during the night of the shooting posed a danger to non-TPD personnel is not based on their perceptions and is inherently speculative. Such testimony should not be permitted under FRE 701.

6. **Defendants should be precluded from asking leading questions to law enforcement officers.**

The Court should preclude Defendants from asking leading questions to TPD personnel under FRE 611, including during the Defendants' cross-examination of such witnesses. Under federal evidence law, a party does not have an absolute right to ask leading questions on cross-examination. FRE 611(c); *United States v. Bensinger Co.*, 430 F.2d 584 (8th Cir. 1970); *Mitchell v. United States*, 213 F.2d 951 (9th Cir. 1954), *Cert. denied*, 348 U.S. 912, 75 S.Ct. 290, 99 L.Ed. 715 (1955). Testimony from law enforcement officers during the City's cross-examination would be "cross-examination in form only and not in fact, as for example the 'cross-examination' of a party by his own counsel after being called by the opponent (savoring more of redirect) . . . ." Advisory Committee's Note to FRE 611(c).

The law enforcement officers Plaintiffs will call were called by the State in Mr. Orn's criminal trial in support for the State's prosecution of Mr. Orn on multiple charges, including felonies. It is anticipated that the TPD personnel Plaintiffs will call will be adverse witnesses, making it proper for Plaintiffs' counsel to ask leading questions on their direct examinations of these witnesses. FRE 611(c)(2). Therefore, the Court should permit Plaintiffs to ask leading questions of TPD personnel on direct examination and preclude Defendants from asking TPD personnel leading questions.

7. **Defendants should be precluded from any reference that the reason law enforcement carry lots of weapons is because they are "outgunned" and anything can happen.**



Defendants and witnesses should be precluded from any reference or comment that the reason law enforcement carry lots of weapons is because they are "outgunned" and anything can happen. Such references are not relevant to any of the issues presented in this case and should be excluded under FRE 402, particularly given that Mr. Orn was not armed at any point during the night of the shooting. Any such references are therefore entirely irrelevant and speculative and should be barred.

**8.    Defendants' Expert, Thomas Wickizer, and any reliance on Wickizer's opinions by other experts, should be excluded pursuant to the Court's order excluding evidence of collateral source payments.**

On April 3, 2018, Judge Leighton entered an Order granting in part and denying in part Plaintiff's motion *in limine* No. 3:

> "Exclude evidence or argument regarding collateral source benefits - GRANTED IN PART AND DENIED IN PART - evidence of a collateral source payment is inadmissible for the purpose of determining the amount of damages and evidence of the full amount billed for plaintiffs' medical care not admissible for the purpose of determining plaintiffs' damages for past medical expenses; however, evidence of the amount accepted by medical providers as full payment is admissible provided the source of the payment is not disclosed to the jury and the other rules of evidence are satisfied."

Despite the order excluding evidence of collateral source payments, Defendants plan to call an economist, Professor Thomas Wickizer, to broadly attack how the medical profession in the United States sets billing rates and opine that collateral source Medicare reimbursement rates reflect the reasonable cost of medical care.[7] Wickizer is not a medical doctor, life care planner, nor has he ever been a hospital administrator.[8] And yet, Wickizer testified that he uses collateral source Medicare reimbursement rates "as a framework for trying to understand what

---

[7] Cochran Dec. Ex. F (Wickizer Report).

[8] Cochran Dec. Ex. G, at 13:23-14:9 (Deposition Transcript of Thomas Wickizer).

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 9 | CASE NO. 3:13-cv-05974-MJP

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

represents the reasonable value."[9] Wickizer should be excluded because the basis for his opinion necessarily requires a jury to be presented with the collateral sources for Mr. Orn's medical payments and whether he receives Medicare.

"A federal court applies state law in matters involving the collateral source rule." *In re Air Crash Disaster Near Cerritos*, Cal., On Aug. 31, 1986, 982 F.2d 1271, 1277 (9th Cir. 1992). For the past 98 years, Washington has had a "rule of strict exclusion of evidence of collateral benefits" in personal injury actions. *See Heath v. Seattle Taxicab Co.*, 73 Wn. 177, 186, 131 P. 843 (1913); *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 804, 953 P.2d 800 (1998); *Sutton v. Shufelberger*, 31 Wn. App. 579, 583, 643 P.2d 920 (1982). Under this rule, plaintiffs in negligence actions are entitled to recover the reasonable value of medical services provided to them, not the amount that a collateral source might have paid for those services. *See Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000); *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 803, 585 P.2d 1182 (1978); *Hayes v. Wieber Enterprises*, 105 Wn. App. 611, 616, 20 P.3d 496 (2001). In accordance with this rule, amounts that a collateral source might pay may not be taken into consideration when assessing the damages that the defendant must pay:

> It is well established that the fact a plaintiff receives, from a collateral source, payments of this nature which have a tendency to mitigate the consequences of the injury that he otherwise would have suffered, may not be taken into consideration when assessing the damages the defendant must pay.

*Stone v. City of Seattle*, 64 Wn.2d 166, 172, 391 P.2d 179 (1964) (citations omitted).

In addition to payments made by private insurers, Washington's appellate courts have consistently held that the Collateral Source Rule applies to benefits that a plaintiff may receive from public sources such as Medicare reimbursements, Social Security benefits, or worker's

---

[9] *Id.*, at 18:16-20.

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

compensation payments. The leading case is *Ciminski v. SCI Corp.*, *supra*. In *Ciminski*, the plaintiff, a 73-year-old widow, fell in the defendant's restaurant and sustained severe hip injuries. Medicare paid $14,000 for her medical expenses. 90 Wn.2d at 803.

The jury returned a verdict for $79,000 in favor of the plaintiff. The defendant then moved to reduce the award by the amount of the Medicare benefits that the plaintiff received. The trial court denied the motion on the ground that the payments were from a collateral source, and the defendant appealed. *Id.*

On appeal, the defendant argued that the Collateral Source Rule should not apply to the Medicare benefits because neither the plaintiff nor her husband had made any payments into the Medicare program. In affirming the trial court, the Supreme Court noted that "[t]he question of whether Part A Medicare payments made to an eligible recipient are payments from a collateral source is one of first impression in this state." *Ciminski*, 90 Wn.2d at 803. The court then stated that "[c]onsequently, we are free to adopt that solution which appears most sensible and equitable, and we hold that such payments are from a collateral source." *Id.*

The court then explained the rationale for its holding, emphasizing the policy that a wrongdoer should not benefit from collateral payments to the person he or she has wronged:

> Under the collateral source rule, payments, the origin of which is independent of the tortfeasor, received by a plaintiff because of injuries will not be considered to reduce the damages otherwise recoverable. Respondent perceives Part A Medicare payments as from an independent and collateral source; appellant does not.
>
> Appellant and amicus, Washington Association of Defense Counsel, argue that the collateral source rule applies only to those benefits, such as payments from accident or health insurance, for which the plaintiff has previously extended consideration. Here, it is contended, neither respondent nor her husband had wages which were taxed to finance Medicare and, therefore, cannot be said to have paid for the Part A coverage ...

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 11 | CASE NO. 3:13-cv-05974-MJP



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

> Despite these arguments, we believe that the collateral source rule should apply to the payments made to appellant. It is true that in some jurisdictions the collateral source rule applies only when the plaintiff can be said to have purchased the benefit received. The weight of authority, however, is otherwise. We agree with the majority of courts that application of the collateral source rule need not be conditioned on some payment by the plaintiff for the benefit received. To so limit the doctrine would be contrary to the policy that the wrongdoer should not benefit from collateral payments made to the person he has wronged.

*Ciminski*, 90 Wn.2d at 804-805 (citations omitted).

The *Ciminski* court also rejected the defendant's argument that the plaintiff might receive a windfall under the Collateral Source Rule. The court emphasized that if there is a windfall it is more just that the person wronged receive it than the wrongdoer:

> Appellant supplements its arguments by contending that failure to reduce respondent's verdict by the amount of the Part A payments has given her a windfall. We note, however, that to deny application of the rule in this instance would allow appellant the full benefit of the payments from the collateral source. Thus, the real question is not whether there is a windfall, but rather who is to get it. As between an injured plaintiff and a defendant, we have no hesitation in saying that the former is entitled to prevail.
> …
> We hold that Part A Medicare payment made to respondent is payment from a collateral source and may not be used to reduce the jury's assessment of damages against appellant.

*Ciminski*, 90 Wn.2d at 806-807.

The *Ciminski* case makes it clear that the Collateral Source Rule requires exclusion of evidence of the amounts that a potential collateral source would have paid Mr. Orn's medical providers. This includes both payments made and reduced rates negotiated with his medical providers, as well as any reimbursement rates set by Medicare and/or by Medicaid. The analysis used by Wickizer in his report rests on Medicare reimbursement rates and should be excluded pursuant to applicable law regarding collateral source payments as well as Judge Leighton's order granting Plaintiff's Motion in Limine No. 3 in part.

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 12 | CASE NO. 3:13-cv-05974-MJP



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

The issue, and the core function of a jury trial, is to determine a particular plaintiff's reasonable medical expenses. A jury is not asked to calculate the medical expenses of a hypothetical person who has the benefit of Medicare in a hypothetical medical circumstance of ideal economic leverage. Nor is the jury called to court to evaluate the efficiency of Professor Wickizer's proposed billing model in the American healthcare system. For this reason, Professor Wickizer's testimony is irrelevant and very likely to confuse and mislead a jury, and should be excluded under FRE 401, 402, and 403. Defendants are attempting to sneak in collateral source evidence with the help of an economic expert, contrary to a crystal clear rule of law that has long barred the same.

Professor Wickizer has been excluded as a witness by at least four different Washington trial judges within the past two years.[10] Most notably, the Washington Supreme Court affirmed Professor Wickizer's exclusion this year. *Gerlach v. Cove Apartments, LLC*, 471 P.3d 181, 188 (2020). The Washington Supreme Court affirmed the finding by Division One that "[e]vidence of what [plaintiff's] physicians accept from Medicare and how the inpatient charges are affected by Dr. Wickizer's cost-to-charge ratio is not proof that Gerlach's medical expenses were unreasonable." *Gerlach v. Cove Apartments, LLC*, 8 Wn. App. 2d 813, 828, 446 P.3d 624, 633, *review granted sub nom*. *Gerlach v. Cove Apartments*, 193 Wn.2d 1037, 449 P.3d 657 (2019), *and rev'd on other grounds*, 471 P.3d 181 (2020). "Evidence that, on average, a procedure costs less than the amount charged or that [plaintiff's] physicians accept a lesser payment for services from Medicare is not helpful to the jury in determining whether [his] medical expenses were reasonable." *Id.* The Court should exclude Professor Wickizer for the same reason and preclude Defendants' other experts from relying on Professor Wickizer's opinions and reports.

---

[10] Cochran Dec., Exhibits H, I, J, K.

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 13 | CASE NO. 3:13-cv-05974-MJP



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**9. Defendants and their experts should be precluded from referencing statements in Than Orn's medical records regarding matters not pertinent to Mr. Orn's medical diagnosis which do not fall within a hearsay exception.**

The Court should prevent Defendants and their experts from referencing hearsay statements in Mr. Orn's medical records which do not qualify for a hearsay exception under FRE 803(4), including statements within medical records which are otherwise subject to exclusion under FRE 404 as inadmissible character evidence or are offered as a back-door attempt to prove the truth of the matter asserted which relate only to liability issues in this case. For example, Defendants' expert, Jennifer J. James, MD, refers to multiple statements in Mr. Orn's medical records which are not reasonably pertinent to a medical diagnosis or treatment as required under FRE 803(4). In her report, Dr. James quotes an October 19, 2011 progress note from Dr. Amanda Steen which states, "*His car nicked a police office* [sic] *standing outside the car* and he was shot 4 times before he passed out, driving the car into a dumpster."[11]

Reference to this note should be excluded as hearsay under FRE 802 given that a portion of this statement is not reasonably pertinent to a medical diagnosis to meet the hearsay exception under FRE 803(4). This progress note does not indicate that it is a statement made by Mr. Orn to Dr. Steen. There is no indication that Dr. Steen is a percipient witness to the incident. This statement does not fall within any hearsay exception and is simply a back-door attempt to introduce hearsay statements from medical records that relate to liability issues such as whether Mr. Orn's vehicle made contact with a law enforcement officer. Any reference to hearsay in medical records that fail to qualify for an exception under FRE 803 should be

---

[11] Cochran Dec., Ex. L, at 15 (Defense Expert Jennifer James MD Report) and Ex. M (Dr. Amanda Steen progress note) (emphasis added).

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 14 | CASE NO. 3:13-cv-05974-MJP

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

excluded, particularly given the unfairly prejudicial effect that the introduction of such a statement or reference thereof would have.

The Court should also exclude reference to comments made in medical records regarding Mr. Orn's behavior that do not meet the hearsay exception under FRE 803 and are otherwise subject to exclusion under FRE 404 as prohibited character evidence. For example, Defendants' expert, Dr. James, quotes a November 14, 2014 progress note from Dr. Atif M. Mian which states, "Reviewed his records and apparently he has also had some significant issues with agitation and what sounds like violent behavior. *This happened sometime in April of 2014, and apparently the police were called to his living situation.*"[12] Such a statement regarding Mr. Orn's behavior being violent or that police were allegedly called should be excluded under FRE 404 as well as under FRE 403 as such a statement serve little probative value regarding Mr. Orn's medical treatment and instead create the prejudicial inference that Mr. Orn possesses a violent character trait or that he has had subsequent incidences with law enforcement.

**10. Defendants should be precluded from any reference to Plaintiff's lawyers at medical appointments.**

The Court should preclude defendants and witnesses from referencing or presenting any argument, speculation, or evidence regarding hearsay statements about Mr. Orn's attorneys being present at Mr. Orn's medical appointments. The presence of Mr. Orn's attorneys is not, in and of itself, related to medical diagnosis or treatment, nor does it describe Mr. Orn's medical history, symptoms, or those symptoms' causes, and therefore references to Mr. Orn's attorney do not qualify as statements made for medical diagnosis or treatment under FRE 803(4).

---

[12] Cochran Dec. Ex. L, at 28 and Ex. N (Dr. Atif M. Mian progress note) (emphasis added).

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 15 | CASE NO. 3:13-cv-05974-MJP



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Therefore, references to Mr. Orn's attorneys' presence at medical appointments in medical notes are inadmissible hearsay and should be precluded under FRE 802.

Additionally, the court should preclude defendants and witnesses from referencing any portion of the February 8th, 2016 note from social worker Marie Loeb referenced in Defendants' expert Dr. James' report, a February 8th, 2016 note from social worker Marie Loeb:

> Marie Loeb, a social worker, attempted to speak with the patient. He was awake but was nonresponsive. Instead, she spoke with his lawyer, Tom. Tom gave her a history. Tom said that Mr. Orn recently lost his Medicaid coverage. Mr. Orn was being seen at St. Joseph for primary care but was discharged a couple of weeks ago for lack of follow through. Tom says that Mr. Orn has not been keeping up with his selfcare. He lives with family and friends who have been increasingly unable to care for him due to his use of methamphetamines and his depression. According to his attorney, it is also because of his Posttraumatic Stress Disorder. The attorney told the social worker that he is likely going to file guardianship papers due to the patient's continued inability to meet his own needs.[13]

Defendants and witnesses should be precluded from making any reference to this note. Sections of the note have no bearing on medical diagnoses or treatment, as they address Than Orn's insurance, finances, and guardianship. These hearsay statements are not permitted under FRE 802 and do not fall under the exception to the hearsay rule provided in FRE 803(4) for hearsay statements pertaining to medical treatment. Indeed, it is not clear that any of this note was obtained for purposes of medical diagnosis or treatment, as James' description of the note does not indicate that the social worker diagnosed Mr. Orn or provided him with any medical treatment.

Even if the note was taken for purposes of diagnosis or the provision of medical treatment, the few references in this note that pertain to medical treatment, such as "Tom gave

---

[13] Cochran Dec. Ex. L, at 29 (Jennifer James Report)

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 16 | CASE NO. 3:13-cv-05974-MJP

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

her a history," are cumulative of other records that do not refer to Mr. Orn's attorney and should be excluded under FRE 403. Because all of the information provided in this note related to medical diagnosis or treatment is cumulative of other medical records that do not mention the presence of counsel, there is little probative value to be gained by referencing this record. Indeed, referencing this note would be tantamount to an invitation to the jury to speculate that Mr. Orn's medical conditions were fabricated by his attorneys, but no evidence in the record supports this. As there is no indication that Mr. Orn's attorney fabricated any of the information described in this note, and all of the information provided therein is cumulative to information provided in medical records that do not contain unfairly prejudicial references to Mr. Orn's attorneys, the court should preclude the Defendants and witnesses from referencing this record.

**11.    Defendants and their experts should be precluded from referencing, commenting on, or introducing medical records regarding Plaintiff Than Orn leaving the hospital before his discharge date.**

Defendants should be precluded from referencing, commenting on, or introducing medical records regarding Plaintiff Than Orn leaving the hospital before his treating physicians wished to discharge him. Defendants are expected to refer to such comments in Mr. Orn's medical records in support of their affirmative defense that Mr. Orn failed to mitigate his damages. However, these references are not relevant to Mr. Orn's damages, which are secondary to him being shot, as no evidence in the record indicates that Mr. Orn's damages were either caused or exacerbated by Mr. Orn leaving prior to the recommendations of his treating physicians.

Under FRE 403, the Court may exclude relevant evidence if its probative value is substantially outweighed by the danger of misleading the jury or creating unfair prejudice to a party. Here, reference to comments that Mr. Orn left the hospital prior to the recommendations



of his treating physicians would mislead the jury by causing them to speculate as to whether or not Mr. Orn's departure from the hospital prior to the date recommended by his treating doctors contributed to his damages.  Unless Defendants can proffer evidence showing the specific difference there would have been if Mr. Orn followed the advice of his treating physicians with respect to his discharge date, reference to such comments within Mr. Orn's medical records should be precluded.

DATED this 15th day of October, 2020.

**PFAU COCHRAN VERTETIS AMALA, PLLC**

By  /s/ Darrell L. Cochran
   Darrell L. Cochran, WSBA No. 22851
   Thomas B. Vertetis, WSBA No. 29805
   Andrew S. Ulmer, WSBA No. 51227
   Alexander G. Dietz, WSBA No. 54842

*Attorneys for Plaintiffs*

**COCHRAN DOUGLAS, PLLC**

By  /s/ Loren A. Cochran
   Loren A. Cochran, WSBA No. 32773

*Attorney for Plaintiffs*

**LAW OFFICE OF THOMAS A. BALERUD**

By  /s/ Thomas A. Balerud
   Thomas A. Balerud, WSBA No. 19539

*Attorney for Plaintiffs*



**CERTIFICATE OF SERVICE**

I, Andrew S. Ulmer, hereby declare under penalty of perjury under the laws of the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Jean P. Homan
    Tacoma City Attorney's Office
    747 Market Street, Suite 1120
    Tacoma, WA 98402
    jhoman@ci.tacoma.wa.us

    Anne M. Bremner
    Karen L. Cobb
    Frey Buck, P.S.
    1200 Fifth Ave, Suite 1900
    Seattle, WA 98101
    abremner@freybuck.com
    kcobb@freybuck.com

DATED this 15th day of October, 2020.

                                    /s/ Andrew S. Ulmer
                                    Andrew S. Ulmer
                                    Associate Attorney

PLAINTIFFS' SUPPLEMENTAL MOTIONS IN LIMINE

Page 19 | CASE NO. 3:13-cv-05974-MJP



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654