The Honorable Marsha J. Pechman

UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THAN ORN, individually, THALISA ORN, individually, J.O. and C.O., by their Guardian, CLARISSE ORN, | NO. 3:13-CV-05974-MJP |
| Plaintiffs, | DEFENDANTS' MOTION OBJECTING TO A REMOTE JURY TRIAL |
| v. | |
| CITY OF TACOMA, a municipal corporation, and; KRISTOPHER CLARK, in his individual capacity, | **NOTED FOR: November 13, 2020** |
| Defendants. | |

I.      **INTRODUCTION AND RELIEF REQUESTED**

Defendants, by and through their undersigned attorneys, respectfully object to this civil jury trial being conducted remotely.  The constitutionality of virtual trials remains in flux: does a jury that potentially excludes those from certain socioeconomic groups constitute a "fair cross section of the community"? Does virtual participation satisfy a litigant's right to be "present" at trial? Does the jury's inability to observe, in person, witnesses' demeanor, body language, and eye contact affect a party's right to confront certain witnesses? These are all open questions, most of which will be resolved on appeal in the coming years. As such, this significant and

Defs' Motion Objecting to Remote Virtual Jury
Trial - 1

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    nuanced action is simply not the proper "test case" with respect to the constitutionality of virtual

2    trials.

3          Further, while virtual trials are, indeed, being conducted in various "pilot programs"

4    throughout the country, those trials generally last just a few days, require minimal witnesses, and

5    include uncomplicated issues. This trial, conversely, is anticipated to last approximately one

6    month, involve hundreds of exhibits, and require up to 70 witnesses, many of whom are experts

7    who will offer lengthy and complicated medical testimony. Once again, even assuming that a

8    virtual trial is constitutional, the sheer logistics involved in trying this particular case in a virtual

9    format will result in additional time wasted, potential harmful errors, and significant juror

10   fatigue. This Court, the jurors, and the parties involved should shoulder the weight of further

11   scheduling issues and increased expenses in an effort to try this matter virtually.

12         Moreover, reports abound of juries in these pilot virtual trials being less than fully

13   engaged and, at times, even obviously ignoring the proceedings completely or leaving the room

14   in which the virtual trial is ongoing. As the sanctity of the jury is of utmost importance in a

15   party's right to a trial by jury, the parties here can ill afford to have this trial tainted by jurors

16   who are distracted or otherwise permitted to allow extraneous factors to steal their attention.

17         Finally, this trial involves a police shooting, a topic heavy on the collective public mind

18   and one that calls for the utmost assurances that the credibility of witnesses can be fully

19   appreciated and judged.  To avoid the certain prejudice that will result from such proceeding,

20   Defendants request the Court continue this matter for only as long as is necessary to safely

21   conduct an in-person trial.  As noted above, Defendants acknowledge that in these unprecedented

22   times virtual trials are *possible*, are sometimes necessary, and are occurring.  This case, however,

23   is not one in which the serious issues raised can be ignored or minimized.  It presents multiple,

Defs' Motion Objecting to Remote Virtual Jury
Trial - 2

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    potentially unsolvable challenges that make the prospect of a virtual trial not only unwieldy, but

2    likely to result in severe prejudice as against Defendants.

3    **II.**      **EVIDENCE RELIED UPON**

4    This motion is supported by the *Declaration of Anne M. Bremner*, and upon the records

5    and papers filed herein.

6    **III.**      <u>**ARGUMENT AND AUTHORITY**</u>

7    **A.**      **Violation of Defendants' Constitutional Right to a Jury Trial**

8    A remote trial under the circumstances present here will effectively deny the Defendants'

9    constitutional right to a jury trial. Defendants have a constitutional right that will be unfairly

10    revoked if compelled to try this matter remotely. An action seeking legal relief under § 1983 is

11    an "action at law," within the meaning of the Seventh Amendment right to a jury trial. U.S.C.A.

12    Const. Amend. 7; 42 U.S.C.A. § 1983; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*,

13    526 U.S. 687, 709 (1999).

14    The Defendants' constitutional right to a jury trial will be abrogated if the jurors are

15    preoccupied and unfocused before, during and following a virtual trial because the jury cannot be

16    considered fair and impartial without each juror satisfying the requisite level of attention that a

17    judge demands and ensures in a live courtroom. While a trial of only a few days might not

18    jeopardize this right, the trial at bar is anticipated to last up to a month and involve the testimony

19    of approximately 70 witnesses, 16 of them experts – some of who will be discussing intricate

20    medical issues--and the presentation of hundreds of exhibits. *Bremner Decl.,* ¶¶ 2-3. The jury's

21    commitment to being attentive, let alone its ability to focus on the proceedings with multiple

22    distractions occurring within the home, will render this extended and complicated virtual trial a

23    threat to Defendant's right to a jury trial.

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

Specifically, adequate *voir dire* is a fundamental right of the parties and juror attention throughout is critical to a fair outcome at trial. In a virtual setting, it is extremely difficult to ensure that prospective jurors adhere to court instructions and are tuned into the proceedings. Although the jurors might be visible on the videoconference, that does not confirm they are truly "present," especially over a period of weeks with sometimes lengthy and complicated medical, technical and other witness testimony. Jurors can more readily ignore or misinterpret witness testimony and evidence by distracting and preoccupying themselves--intentionally or unintentionally–at home. An inattentive, distracted, and preoccupied jury is extremely likely to compromise the Defendants' constitutional right to a fair jury trial and to result in mistrial or appealable error.

This is not a matter of speculation; these issues are arising in virtual proceedings in multiple states. In Texas's first virtual jury trial, a juror caused a delay when he took a telephone call that extended beyond the allotted break time and was unable to hear the judge's attempt to get his attention and return to the proceedings. Katie Buehler, "Texas Court Holds First Jury Trial Via Zoom In Insurance Feud," Law360, May 18, 2020, https://www.law360.com/articles/1274097/texas-court-holds-first-jury-trial-via-zoom-in-insurance-feud. Similarly, two days into the fully remote trial in *Ocampo et al. v. Honeywell International Inc.*, the defendant filed a notice of "irregularities" expressing concerns over the "attentiveness of jurors" who were walking around while the Court was issuing jury instructions and were "very clearly working" or lying in bed during the trial. *Ocampo et al. v. Honeywell International Inc.*, case number RG19041182, in the Superior Court of the State of California, County of Alameda; Dorothy Atkins, "Judge to Zoom Trial Asbestos Jury: 'Pay Attention, Please," LAW360, Aug. 24, 2020, https://www.law360.com/articles/1303820/judge-to-zoom-

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

trial-asbestos-jury-pay-attention-please-?copied=1. *Bremner Decl.*, ¶ 6.

Likewise, in a recent virtual California case, the defendant moved for a mistrial when jurors were noted to be engaging in a host of distracting activities during *voir dire* that could have never occurred in a physical, in-person setting: lying in bed (possibly asleep), exercising on an elliptical machine, caring for children and pets, leaving the room for various reasons, and watching the proceedings on one device while using another, entirely separate, electronic device for other (potentially improper) purposes Motion for Mistrial, *Wilgenbusch v. Amer. Biltrite Inc.*, No. RG19029791 at 4–5 (Cal. Super. Ct. Alameda Cty. July 16, 2020), https://images.law.com/contrib/content/uploads/documents/292/70974/Asbestos-trial-folo-up-mtn-for-mistrial.pdf; Amanda Bronstad, *Mistrial Motion Says Jurors Worked Out, Checked Stove, During Virtual Voir Dire in Asbestos Case*, LAW.COM, July 20, 2020, https://www.law.com/2020/07/20/mistrial-motion-says-jurors-worked-out-checked-stove-during-virtual-voir-dire-in-asbestos-case/; Debra Cassens Weiss, *Potential Jurors exercised, curled up on bed during virtual voir dire, motion says in asbestos case*, ABAJOURNAL, July 22, 2020, https://www.abajournal.com/news/article/potential-jurors-exercised-curled-up-on-bed-during-virtual-voir-dire-motion-says.

In that same case, the plaintiff was noted to have "conversed with two jurors, in the presence of the rest of the jury" and the jurors assisted the plaintiff in setting up his "virtual background." J. Richard Caldwell Jr., Christian Tiblier, and Kathleen Shea, "Pandemic-Era Civil Jury Trials Require Constitutional Scrutiny," Law360, October 6, 2020, https://www.law360.com/articles/1317194/pandemic-era-civil-jury-trials-require-constitutional-scrutiny. The case settled before the court ruled on the motion; however, it is clear to see how decreased juror attention and improper juror-party interaction can result in a harmful error and

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

require a new trial. *Bremner Decl.,* ¶ 6.

Juror distraction is not the only issue that could result in prejudice against a party during a virtual trial; technology issues can be equally detrimental. For example, in a damages-only Florida action held over Zoom, connection problems necessitated the removal of a juror, and in a virtual Texas action, a potential juror did not participate due to technology issues related to connecting to the proceedings. J. Richard Caldwell Jr., Christian Tiblier, and Kathleen Shea, "Pandemic-Era Civil Jury Trials Require Constitutional Scrutiny," Law360, October 6, 2020, https://www.law360.com/articles/1317194/pandemic-era-civil-jury-trials-require-constitutional-scrutiny. In fact, in *Dallo v Holland America Line, Inc.* (2:19-cv-00865), a virtual trial that was recently held before Hon. Judge Thomas Zilly of this Courthouse, there were a number of instances in which jurors were dropped from the virtual proceedings – at least once during the questioning of an expert witness and multiple times during closing statements. It is unclear whether these jurors missed pertinent testimony, as there were no read-backs requested of the court reporter. Certainly, the inability of jurors to hear all evidence presented could resulted in harmful error requiring a mistrial.

This concern exists not only with respect to void dire or jurors focusing their attention during the trial proceedings, but also extends into the virtual deliberation "room."  It is well settled that "the same concerns of the sanctity and secrecy of the jury room apply with as much force to civil as to criminal trials and as much implicate the rights of civil as of criminal litigants." *Jones v Sisters of Providence in Washington*, 93 Wash App 727, 732, 970 P2d 371, 374 (Wash Ct App 1999), affd sub nom. *Jones v Sisters of Providence in Washington, Inc.*, 140 Wash 2d 112, 994 P2d 838 2000). Where that sanctity is disrupted, a mistrial is required. *Id.* In a virtual setting, situations can arise to affect the jury room that would never occur during physical

Defs' Motion Objecting to Remote Virtual Jury
Trial - 6

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1  deliberations. For example, family members or friends could have a hand in determining the

2  outcome of the case, as those individuals might be in the room with a juror throughout trial or

3  while he or she is deliberating. Additionally, jurors could do extrinsic research – individually or

4  together – regarding detailed medical evidence or other relevant issues in the case. While the

5  Court can certainly instruct the jurors not to do so, the fact remains that there is no way to ensure

6  that this does not occur without disrupting the sanctity of jury deliberations.

7          **B.       Violation of Defendants' Due Process Rights**

8          A remote virtual trial will also deny the Defendants' constitutional guarantee of

9  fundamental fairness in the jury trial process. Procedural due process requires an adequate

10 opportunity to be heard. *Reid v. Engen,* 765 F.2d 1457, 1463 (9th Cir.1985); *Kirk v. U.S. I.N.S.,*

11 927 F.2d 1106, 1107 (9th Cir. 1991). Due process requires "that the agency gave the appealing

12 party adequate notice and an opportunity to be heard, and that procedural irregularities did not

13 undermine the fundamental fairness of the proceedings." *Sherman v. State,* 128 Wn.2d 164, 184,

14 905 P.2d 355 (1995). Judge James C. Dever III, of the Eastern District of North Carolina,

15 decided to proceed with two separate jury trials in May after determining they could be

16 conducted safely by putting certain protocols in place. Judge Dever reminds courts that the

17 United States is one of the few countries that guarantees a jury trial and that "[t]here is no

18 pandemic exception in the Constitution. And the Constitution has stood the test of time for more

19 than 230 years." *Federal Judges Reinventing the Jury Trial During Pandemic*, U.S COURTS,

20 Aug. 27, 2020, https://www.uscourts.gov/news/2020/08/27/federal-judges-reinventing-jury-trial-

21 during-pandemic?utm_campaign=usc-news&utm_medium=email&utm_source=govdelivery.

22         First, a virtual trial could violate a party's right to a jury that represents a fair cross

23 section of the community. In this regard, pursuant to 28 USC § 1861, "It is the policy of the

Defs' Motion Objecting to Remote Virtual Jury
Trial - 7

1   United States that all litigants in Federal courts entitled to trial by jury shall have the right to

2   grand and petit juries selected at random from a fair cross section of the community in the

3   district or division wherein the court convenes." As the United Stated Supreme Court made clear

4   in *Thiel v. S. Pac. Co.* (328 US 217, 220 [1946]), this does not suggest that each jury "must

5   contain representatives of all the economic, social, religious, racial, political and geographical

6   groups of the community; frequently such complete representation would be impossible." It

7   does, however "mean that prospective jurors shall be selected by court officials without

8   systematic and intentional exclusion of any of these groups." Virtual trials could undoubtedly

9   systematically and intentionally eliminate entire groups of individuals who would otherwise be

10  qualified to serve on in-person juries, and this is precisely what is prohibited by 28 USC § 1861.

11          This case is rampant with factual disputes and the outcome will rest heavily on matters of

12  credibility, creating serious concerns regarding the ability to adequately make such assessments.

13  The Court in *Hassoun v. Searls* recently concluded such concerns as those expressed her must be

14  considered when analyzing whether a virtual hearing is an appropriate substitute for an in-person

15  hearing.  In that matter the court considered various factors including the numbers of parties,

16  attorneys, court staff, witnesses, law enforcement officials and interested members of the public,

17  ultimately stating,

18          …the number of people involved makes such a proposition [video or telephonic
            evidentiary hearing before the judge] unwieldy at best . . . Further, the factual
19          disputes in this matter rest heavily, if not almost exclusively, on matters of
            credibility, and the Court finds that a virtual hearing would present significant
20          challenges in being able to adequately perform the critical credibility assessments
            that this matter requires.

21
22  *Hassoun v. Searls,* 453 F. Supp. 3d 612, 626 (W.D.N.Y. 2020). This analysis involved the

23  decision to postpone an evidentiary hearing in front of a judge, who decided that he, much less a

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    jury, would be unable to adequately navigate the circumstances and adequately perform the

2    critical credibility assessments required. *Id*. at 625.

3           Given the current attitudes toward police and their departments, and the scale of this case

4    (both size and a demand of over $10 mil.), Defendants are seriously concerned about the Court's

5    and counsel's ability to successfully manage the large numbers of people and documents in a

6    videoconference format alone. The opportunity to judge the demeanor of a witness face-to-face

7    is of the utmost importance when evaluating creditability. The Court in *Bos. Telecommunications*

8    *Grp., Inc. v. Wood*, when even just considering deposition testimony in place of live in-person

9    testimony, stated that "both sides would benefit from live in-person testimony that would enable

10   a factfinder to evaluate [witnesses'] demeanor." *Bos. Telecommunications Grp., Inc. v. Wood*,

11   588 F.3d 1201, 1209 (9th Cir. 2009).

12          Particularly concerning in the case at trial are the current events and accompanying

13   virulent social attitudes towards police officers, creating a greater need for face-to-face testimony

14   and to ensure that jurors are being adequately supervised to avoid excessive outside influence.

15   The Federal Courts recently introduced new jury instructions specifically geared toward

16   deterring jurors from using social media to communicate about or research cases.

17   https://www.uscourts.gov/news/2020/10/01/new-jury-instructions-strengthen-social-media-

18   cautions.

19          Forcing the jury to view the officers' testimony remotely will also place Defendants at a

20   distinct visual and auditory disadvantage, resulting in the dehumanization that naturally occurs

21   with such spatial and virtual separation.   Requiring Officer Clark to subject himself to the risk of

22   being dehumanized while testifying remotely would put him in an unfairly prejudicial position as

23   he seeks to tell his story in such a way that the jury is entitled to see, hear and feel in closer

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

proximity than can be achieved on a small screen in a different location.  The assessment of the use of force by law enforcement officers necessarily requires the finder of fact to adequately and effectively assess the officer's demeanor and credibility when faced with the ultimate question of whether the officer's actions were reasonable and justified. That is not a factor that can be diminished under the law.

## C.    Violation of Federal Rule of Civil Procedure 43

Federal Rule of Civil Procedure 43(a) provides that, as a general matter, a witness's testimony at trial "must be taken in open court." Fed. R. Civ. P. 43(a). Rule 43(a) also provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."  Although the decision to require testimony by videoconference falls within the Court's discretion, that discretion should be carefully measured where allowing alternative presentation of evidence has the real potential to prejudice a party. *In re RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 970 (D. Minn. 2020). The 1996 advisory committee note to FRCP 43 advisory committee notes highlight that "[t]he importance of presenting live testimony in court cannot be forgotten." Fed. R. Civ. P. 43, Advisory Committee Note.

The exception to FRCP 43(a) is not applicable in this case.  While we are in a pandemic, the potential negative consequences of a remote virtual jury trial far outweigh the potential benefits of moving forward in this manner for the sake of timing. Unlike the court proceedings that will be mentioned below, wherein a court has held a remote trial and/or ruled the pandemic is a "compelling circumstance" for a virtual trial under FRCP 43, this trial is of constitutional magnitude will have high-stakes, a binding verdict, a long duration, a jury panel, and the unique challenges that will arise while trying a police shooting case during nationwide demonstrations

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    against police departments.

2    **D.      There are Appropriate Cases for Remote Trials**

3    **1.      Remote Jury Trials**

4    There have been a small number of remote civil jury trials, but the circumstances under

5    which they have been held can be clearly distinguished. They have been short in duration, not

6    presenting constitutional questions, with non-binding verdicts, and/or verdicts under $500,000.

7    The first U.S. fully remote civil jury trial with a legally binding verdict was a Florida Fourth

8    Circuit trial held in August 2020. *Cayla Griffin vs. Albanese Enterprise, Inc Case Number: 16-*

9    *2019-CA- 1555 in the Circuit Court, Fourth Judicial Circuit.* This was a **one-day** damages trial

10   that consisted of two days of Zoom jury selection and a $354,000 verdict for pain and suffering,

11   and $10,000 for future medical costs. Collin County District Court in Texas held a remote civil

12   jury trial in May 2020; however, it was a **one-day** insurance dispute jury trial (a so-called

13   summary jury trial) where jurors hear a condensed version of a case and deliver a **non-binding**

14   **verdict**. Nate Raymond, *Texas tries a pandemic first: a jury trial by Zoom*, REUTERS, May 18,

15   2020, https://www.reuters.com/article/us-health-coronavirus-courts-texas/texas-tries-a-

16   pandemic-first-a-jury-trial-by-zoom-idUSKBN22U1FE; The Associated Press, *Texas court holds*

17   *first U.S. jury trial via videoconferencing*, FORTUNE, May 23, 2020,

18   https://fortune.com/2020/05/23/texas-court-jury-trial-videoconferencing/.

19   The first remote criminal jury trial took place in Texas on August 10, 2020. However,

20   this trial was the ideal trial to "test-drive virtual criminal jury trials because *the stakes were low*

21   and many jurors would already be familiar with traffic court proceedings." Justin Jouvenal,

22   *Justice by Zoom: Frozen video, a cat — and finally a verdict*, THE WASHINGTON POST, Aug. 12,

23   2020, https://www.washingtonpost.com/local/legal-issues/justice-by-zoom-frozen-video-a-cat--

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1   and-finally-a-verdict/2020/08/12/3e073c56-dbd3-11ea-8051-d5f887d73381_story.html

2   (emphasis added). The jury issued its verdict after deliberating for about 15 minutes and

3   sentenced the defendant to pay $50. *Id.* The COVID-19 pandemic may justify conducting lower

4   stake bench trial proceedings by videoconference, but the factors are different for jury trials.

### 2.   Remote Bench Trials

6          Some federal courts have determined that the coronavirus pandemic presents "compelling

7   circumstances" under FRCP 43(a) and have held that conducting a trial via videoconference was

8   justified; however, most of these federal courts held or will hold a virtual **bench** trial. *Gould*

9   *Elecs. Inc. v. Livingston Cty. Rd. Comm'n*, No. 17-11130, 2020 WL 3717792, at *4 (E.D. Mich.

10  June 30, 2020) (patent infringement bench trial); *Vitamins Online, Inc. v. HeartWise, Inc.*, No.

11  2:13-CV-00982-DAK, 2020 WL 3452872, at *9 (D. Utah June 24, 2020) (bench trial). In *In re*

12  *RFC & ResCap Liquidating Tr. Action*, 444 F. Supp. 3d 967, 969 (D. Minn. 2020), the court held

13  a six-week bench trial by videoconference and the Court in *Argonaut Ins. Co. v. Manetta Enters.,*

14  *Inc.*, No. 19-000482, 2020 WL 3104033, at *2–3 (E.D.N.Y. June 11, 2020) held a three-day

15  bench trial regarding the narrow issue of damages be conducted via videoconference. The Court

16  in *Flores v. Town of Islip* found that the COVID-19 pandemic constitutes "compelling

17  circumstances to hold a bench trial in his matter via video-conference" because of the short

18  duration of the trial and the limited number of issues to be tried and testimony presented. *Flores*

19  *v. Town of Islip*, No. 18-CV-3549 (GRB)(ST), 2020 WL 5211052, at *1 (E.D.N.Y. Sept. 1,

20  2020). Additionally, other federal courts that allowed videoconferencing trials were bench trials.

21  See *Food & Water Watch, Inc. v. U.S. Envtl. Prot. Agency*, 291 F. Supp. 3d 1033 (N.D. Cal.

22  2017) and *Jones v. DeSantis*, No. 4:19CV300-RH/MJF, 2020 WL 2618062, at *2 (N.D. Fla. May

23  24, 2020).

Defs' Motion Objecting to Remote Virtual Jury
Trial - 12

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

**E.      Technological Challenges of Videoconference Testimony**

Video testimony presents the frequent opportunity for technical "glitches," video "lagging" and improper lighting of a witness's face. These complications may sometimes make it hard to see and hear in real-time a witness's hesitation, doubts, confidence, precipitancy, expressions, calmness, consideration, and variation of language. Even though video and videoconference may sometimes be appropriate, live testimony is preferred. *Reynolds v. Centimark Corp.*, No. C12-0488-RSM, 2012 WL 5914870, at *3 (W.D. Wash. Nov. 16, 2012). The best form of "live testimony" is in-person live testimony.

Just recently, a juror in Pierce County expressed exactly these concerns in an opinion editorial in his local paper regarding a witness who testified remotely from her home and that the case turned on this important witness's testimony. The juror explained that while judging the witness's demeanor in the case was not an issue, he contemplated that "if her face had frozen in a scary way or she had left something weird in the background, all bets would've been off." Chuck Kleeberg, *My Pierce County jury duty felt weird. Coronavirus was the cause, guilty as charged*, THE NEWS TRIBUNE, Oct. 9, 2020, https://www.thenewstribune.com/opinion/op-ed/article246337095.html.  Even jurors recognize that technology is not ideal, especially when credibility is so important, and the stakes are so high.

Security is another concern with remote video trials. There have been cases of "Zoom bombing" and hackers derailing videoconferences with nudity, offensive remarks, bigoted comments, and threats. Aaron Holmes, *Courts and government meetings have fallen into chaos after moving hearings to Zoom and getting swarmed with nudity and offensive remarks*, BUSINESS INSIDER, April 18, 2020, https://www.businessinsider.com/zoom-courts-governments-struggle-to-adapt-video-tools-hearings-public-2020-4; Regina Garcia Cano & Aaron Morrison,

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1    *Hackers' new target during pandemic: video conference calls*, AP NEWS, April 6, 2020,

2    https://apnews.com/article/94f4446acae487e1eb7cc85e2c176908. Defendants reasonably believe

3    this case will attract considerable attention, and potentially hackers, due to the nation's current

4    civil unrest and attitudes towards the police; one more reason why this is not a case amenable to

5    a remote trial.

6        The Federal Courts just recently introduced new jury instructions specifically designed to

7    address the prevalence of social media to ensure jurors are not influenced, even unintentionally,

8    by social media. https://www.uscourts.gov/news/2020/10/01/new-jury-instructions-strengthen-

9    social-media-cautions.

> Jurors today are more likely to see popup social media notifications on their
> phones and computers, making them more vulnerable to unintentionally hearing
> about a trial or a sensitive legal issue. And social media has been used with
> greater sophistication to communicate disinformation and influence public
> opinion. Taken together, these changes make it challenging for courts to ensure
> that jury members render their verdicts based only on what happens in the
> courtroom, as is required.

14   *Id.* Those precautions are can obviously be magnified to a huge degree when jurors are not even

15   in a courtroom, but in their own kitchens or bedrooms with access to their devices.

16       **F.  An In-person Jury Trial is Necessary**

17       Given the complexities of this case, an in-person jury trial [even if socially distanced] is

18   necessary and once this Court is given the go ahead, such a trial can be accomplished with

19   restructuring, flexibility, and communication. *Bremner Decl.*, ¶ 8.  Anticipating that for the

20   foreseeable future the coronavirus pandemic is here to stay, courts are facing the need to find

21   feasible ways to conduct in-person civil jury trials in cases where it is necessary to protect the

22   rights of the parties. Defendants understand that the current Western District of Washington

23

Defs' Motion Objecting to Remote Virtual Jury
Trial - 14

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1   General Order 15-20 permits [not requires[1]] civil remote video proceedings, including jury trials

2   with jurors participating remotely. GENERAL ORDER NO. 15-20, (W.D. Wash .Oct. 2, 2020),

3   https://www.wawd.uscourts.gov/sites/wawd/files/10-02-20GeneralOrder15-20.pdf. Nevertheless,

4   as noted above, federal and state courts nationwide are administering in-person jury trials.

5   Washington State courts have successfully resumed in-person jury trials in King County and

6   Pierce County. https://www.kingcounty.gov/courts/superior-court.aspx;

7   https://www.piercecountywa.gov/6873/Juror-Alert.

8       The U.S. Court's COVID-19 Judicial Task Force states that "[w]hen each court

9   determines that the time is right, the judiciary must reconstitute jury trials during the COVID-19

10  pandemic. This report contains preliminary suggestions and ideas for courts to consider when

11  restarting jury trials." It is time for the Western District of Washington to resume and

12  reconstitute jury trials. Judicial Task Force, *Report of the Jury Subgroup – Conducting Jury*

13  *trials and Convening Grand Juries During the Pandemic*, U.S. COURTS, June 4, 2020,

14  https://www.uscourts.gov/sites/default/files/combined_jury_trial_post_covid_doc_6.10.20.pdf.

15  **If this is _not_ the time, then this is _not_ the case.**

16      "Judge Karen K. Caldwell, one of the first federal judges to resume jury trials after the

17  coronavirus pandemic. Caldwell, of the District of Eastern Kentucky, "is among a group of

18  judges around the country who are reinventing the jury trial so that it is not only a fair forum for

19  the administration of justice, but also a safe experience for everyone in the courtroom." *Federal*

20  *Judges Reinventing the Jury Trial During Pandemic*, U.S. COURTS, Aug. 27, 2020,

21  https://www.uscourts.gov/news/2020/08/27/federal-judges-reinventing-jury-trial-during-

22  pandemic?utm_campaign=usc-news&utm_medium=email&utm_source=govdelivery. She

23

---

[1] Parties may stipulate to remote proceedings.

Defs' Motion Objecting to Remote Virtual Jury
Trial - 15

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

presided over an eight-week drug trafficking trial in April, saying, "[e]very day we evaluated and reevaluated our processes, and made adjustments throughout the trial. *Id*. Charity Wilson, an assistant U.S. attorney, said "At some point, you have to try these cases." *Id*. For example, she said, during voir dire, the judge made it clear that anyone who felt uncomfortable could be excused from serving. *Id*.  Perhaps that time will arrive soon for this Court as well and the parties can be prepared to appear on short notice.

## IV.    <u>CONCLUSION</u>

Defendants respectfully request the Court protect the Defendants' constitutional right to a fair trial and decline to administer this jury trial by remote videoconferencing.  Defendants agree that there are cases that are appropriate to be tried remotely, but others are not.  This matter is anticipated to last up to a month with jury selection and the holiday break, and to involve hundreds of exhibits, dozens of witnesses and complicated medical and expert testimony. There are warning flags being waved across the country regarding juries being less than fully engaged and sometimes not engaged at all while they care for their homes, children, work and pets, and having access to secondary electronic devices.  This case will also involve some highly sensitive and confidential evidence that may be subject to sealing in Federal Court. It is unknown how such information could be kept private and confidential without any means to ensure that jurors cannot preserve such evidence with screenshots or cell phones.

Finally, this trial involves a tragic officer-involved shooting, a topic weighing heavy on the nationwide public conscience. This unsettled environment adds another layer of concern that calls for the utmost assurance that the credibility of witnesses can be fully and fairly assessed by the judge and jury without the outside interference made possible by jurors being in their own homes with potential access to other people and social media even during the trial day. There are

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

attendant and well-founded concerns regarding the sometimes virulent social attitudes towards police officers, particularly in Western Washington right now, and accepting the risk of video technology further dehumanizing the officers, especially Officer Clark, is simply not a risk that is acceptable without placing the fairness of the entire proceeding in jeopardy.  While Defendants understand and sympathize with the Plaintiffs' desire to move forward sooner rather than later, favoring that desire over the constitutional rights of the City and Officer Clark to a fair trial would be unjust and highly susceptible to appeal.

While other U.S. courts have administered remote trials, the circumstances in which those trials have taken place are succinctly different than those presented here. Defendants respectfully request this Court continue this matter for only as long as necessary to conduct the in-person trial necessary to protect the inalienable constitutional rights of the Defendants.

DATED this 23rd day of October 2020, at Seattle, Washington.

**FREY BUCK, P.S.**

_____/s/ Anne M Bremner_____
Anne M. Bremner, WSBA #13269
Attorneys for Defendants

_____/s/ Karen L. Cobb_____
Karen L. Cobb, WSBA #
Attorneys for Defendants

FREY BUCK P.S.
1200 FIFTH AVENUE, SUITE 1900
SEATTLE, WA 98101
P: (206) 486-8000 F: (206) 902-9660

1

## Certificate of Service

2
The undersigned certifies under the penalty of perjury according to the laws of the United
States and the State of Washington that on this date I caused to be served in the manner noted

3
below this document entitled **DEFENDANTS' MOTION OBJECTING TO A REMOTE
VIRTUAL JURY TRIAL** on the following individuals:

4

5
Darrell L. Cochran, WSBA No. 22851          Jean Pollis Homan, WSBA No.27084
Thomas B. Veretis, WSBA No. 29805           Tacoma City Attorney's Office
Pfau Cochran Veretis Amala PLLC             747 Market St., Ste. 1120

6
909 A St., Ste. 700                         Tacoma, WA 98402-3767
Tacoma, WA 98402                            T: (253) 591-5885

7
T: (253) 777-0799                           F: (253) 591-5755
F: (253) 627-0654                           jhoman@cityoftacoma.org
darrell@pcvalaw.com

8
tom@pcvalaw.com                             *Attorneys for Defendants*

9
*Attorneys for Plaintiffs*

10
Loren A. Cochran, WSBA No. 32773
Cochran Douglas, PLLC

11
4826 Tacoma Mall Blvd., Ste. C
Tacoma, WA 98409

12
loren@cochrandouglas.com

13
*Attorneys for Plaintiffs*

14
Thomas A. Balerud, WSBA No. 19539
The Law Office of Thomas A. Balerud

15
417 S. G St.
Tacoma, WA 98405

16
T: (253) 573-1111
F: (253) 573-1115

17
tbalerud@balerudlaw.com

18
*Attorneys for Plaintiffs*

19
**[X]      Via CM/ECF system**

20
DATED this 23rd day of October, 2020, at Seattle, Washington.

21
Karen L. Cobb via ECF

22
Karen L. Cobb

23

Defs' Motion Objecting to Remote Virtual Jury
Trial - 18