1

2

3

4

5

6

**THE HONORABLE MARSHA J. PECHMAN**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

7  THAN ORN, individually, THALISA ORN,
  individually, J.O. and C.O., by their
8  Guardian, CLARISSE ORN,

9                          Plaintiffs,            No. 3:13-cv-05974-MJP

10       vs.                                       PLAINTIFFS' TRIAL BRIEF

11  CITY OF TACOMA, a municipal
  corporation, and KRISTOPHER CLARK, in
12  his individual capacity,

13                          Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## I.     INTRODUCTION

Plaintiffs, by and through their attorneys of record, respectfully submit this trial brief to address the factual, legal, and evidentiary issues presented by this case.

As the Court knows, this tragic case arises from the events which occurred on the night of October 12, 2011, and which culminated in the unlawful shooting of Plaintiff Than Orn by Tacoma Police Department Officer Kristopher Clark and the Tacoma Police Department's ratification of that shooting.  Plaintiffs submit, based upon the testimony of the officers at the scene, admissions by the Chief of Police, objective evidence of the case and the expert opinions of a veteran law enforcement officer and expert in the use of force, that the totality of the circumstances show critical violations in Tacoma Police Department's (TPD) improper pursuit and Officer Clark's excessive use of force which left Than Orn gravely injured and ultimately paralyzed.  Those failures, include, but are not limited to:

- TPD's decision to follow Orn's vehicle when only a minor traffic violation, driving without headlights on, had occurred and where no felony situation existed;

- TPD's improper pursuit that continued even after Mr. Orn cured the traffic violation by promptly turning his headlights on when he noticed a police car turning to follow him;

- TPD's use of twenty-two (22) responding vehicles to a non-felony, traffic violation and failure to yield, including anywhere from five to twelve vehicles following directly behind Orn, in violation of TPD policy;

- TPD's attempts to use an improper, policy-violating "rolling roadblock" to stop Orn's vehicle;

- TPD's failure to remove its scene commander, Sgt. Al Morris, from the lead car while in pursuit of Orn;

- Officer Clark's improper and unlawful use of his patrol vehicle as a roadblock to stop a suspect who was neither assaultive nor life-threatening under TPD policies and the universally accepted continuum of force model;

- Officer Clark's defiance of repeated dispatch commands for officers to remain in

PLAINTIFFS' TRIAL BRIEF



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

their vehicles;

- Officer Clark's decision to fire 2-3 times at a vehicle that was passing him and was not an imminent danger of harm or death to either Officer Clark or anyone else; and,

- Officer Clark's decision to continue firing 7-8 more times as the vehicle was traveling away from him, when neither he, nor anyone else was in imminent danger of harm or death.

Neither the actions of TPD's officers in pursuit of Than Orn nor the actions of Officer Clark in repeatedly shooting Orn were objectively reasonable based upon a totality of the circumstances. These actions resulted in catastrophic and permanent harm to Plaintiff Than Orn, and by extension to his children, who have been deprived of their relationship with Than Orn, their father, as a result of his injuries. Plaintiffs thank the Court for its work on this matter and looks forward to a spirited and concise presentation of the case.

## II.      FACTUAL BACKGROUND

The Court is acquainted with the basic factual outline of events but, for purposes of evaluating some of the liability and damages issues, the following facts should prove useful.

### A.      TPD's initial interaction with Than Orn – Sgt. Alan Morris

Than Orn was a 34-year-old Cambodian-American husband and father of three living in an apartment complex on S. 65th St. and Tacoma Mall Boulevard, when, on October 12, 2011, his life changed forever.[1]  At approximately 8:30 p.m., Orn was driving a white Mitsubishi Montero SUV down S. 64th St., with his parking lights on but his headlights were off.[2]  Orn passed a silver vehicle with no visible light bar, driven by TPD Sgt. Alan Morris going in the

---

[1] Cochran Dec. at ¶ 2, Ex. 1, at 7:12-20, 127:7-15 (Deposition of Plaintiff Than Orn).

[2] Cochran Dec. at ¶ 2, Ex. 1, at 124:9-14.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

opposite direction.[3]  Morris drove past the white SUV, turned his vehicle around, turned on his emergency lights mounted at the top of his windshield and accelerated to catch up to Orn.[4]  At 8:31 p.m., Sgt. Morris radioed to dispatch that he was attempting to pull the vehicle over but that the vehicle was not stopping.[5]  The driver's speeds were between 25 and 35 MPH at their fastest, and Morris did not consider the driver's actions reckless.[6]  Morris followed the vehicle and continued to give updates to dispatch.[7]  Morris considered Orn's actions to be failing to yield.[8]

## B.    Growing Procession Following Orn and a Rolling Roadblock

Officer Daniel Bortle joined Sgt. Morris in the pursuit of Than Orn.  According to Officer Bortle, he maneuvered his patrol car alongside Orn with Sgt. Morris "to try and box [Orn] in."[9]  Although it was never reported to dispatch, three to four minutes after Officer Bortle pulled alongside Orn, Officer Bortle, Sgt. Morris and Officer Michael Johnson initiated a "rolling roadblock" in an attempt to stop Orn's vehicle.[10]

---

[3] Cochran Dec. at ¶ 3, Ex. 2, at 18:6-7, 19:3-7, 20:13-17 (Deposition of Alan Morris).

[4] Cochran Dec. at ¶ 3, Ex. 2, at 19:3-7, 22:9-17.

[5] Cochran Dec. at ¶ 4, Ex. 3 (CAD Report).  See also Exhibit 4 for a true and accurate copy of an audio CD of the CAD voice transmissions.  Cochran Dec. at ¶ 5, Ex. 4.  The voice tracks begin with Sgt. Morris's first call to dispatch through the point that shots were fired and end shortly after Orn's vehicle crashed through a fence and a brick wall.

[6] Cochran Dec. at ¶ 3, Ex. 2, at 21.

[7] Cochran Dec. at ¶ 3, Ex. 2, at 23.

[8] Cochran Dec. at ¶ 3, Ex. 2, at 23.

[9] Cochran Dec. at ¶ 6, Ex. 5, at 10:5-11:10 (Deposition of TPD Officer Daniel Bortle).

[10] Cochran Dec. at ¶ 6, Ex. 5, at 10:23-11:10, 14:22-15:12, 16:15-21.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Q     At any point when you were involved were there at least three vehicles that were surrounding Mr. Orn's traveling vehicle?

A     Yes.

Q     And was there an attempt to try and bring him to a stop?

A     Yes.[11]

Officer Bortle, Sgt. Morris and Officer Michael Johnson pulled alongside Orn, traveling between 5 and 15 m.p.h.[12] Sgt. Morris remained the supervisor of the Orn pursuit while the rolling roadblock was taking place.[13] According to Officer Bortle, TPD's policy at the time regarding the use of a rolling roadblock was that it was only allowable in situations involving the use of deadly force, where the situation involved an imminent threat to bodily injury or death.[14]   But Officer Bortle admits there were no reports of Than Orn being suspected of a violent felony or that he had a firearm.[15]   Further, there were no reports of Than Orn's actions escalating which justified the use of deadly force.

## C.     Clark's Actions Leading to the Shooting

Officers Donald Rose and Kristopher Clark were inside TPD's three sector substation at Wapato Park when they heard Sgt. Morris first call out that he was trying to stop Than Orn's vehicle.[16] Sgt. Morris had radioed dispatch that the vehicle was failing to yield.[17]

---

[11] Cochran Dec. at ¶ 6, Ex. 5, at 19:12-17.

[12] Cochran Dec. at ¶ 6, Ex. 5, at 25:4-23.

[13] Cochran Dec. at ¶ 6, Ex. 5, at 27:5-22.

[14] Cochran Dec. at ¶ 6, Ex. 5, at 21:20-25; 22:1-3.

[15] Cochran Dec. at ¶ 6, Ex. 5, at 26:18-21.

[16] Cochran Dec. at ¶ 7, Ex. 6, at 12:2-16 (Deposition of TPD Officer Donald Rose).

[17] Cochran Dec. at ¶ 7, Ex. 6, at 12:22-24.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1. **Paralleling Orn's Route.**

Officers Rose and Clark went out to Clark's Ford Expedition patrol vehicle and headed to the direction that Sgt. Morris was calling out over the radio.[18]  Officers Rose and Clark were about 15 blocks away from Sgt. Morris.[19]  Officers Rose and Clark knew that only a traffic violation had occurred and that Orn's vehicle was failing to yield.[20]  The officers also knew that neither violation was a felony and that Orn's vehicle was not implicated as being involved in any felony situation.[21]  In the continuum of force as the officers understood Than Orn's behavior, Orn was only considered to be "active resistant."[22]  Officers Rose and Clark were "paralleling the pursuit," meaning they were not in line with other officers following Orn but were following on side streets.[23]  Five to seven TPD vehicles were following behind Orn at this time.[24]

Officers Clark and Rose blocked westbound traffic at the intersections of 56th and Alaska by positioning the Expedition in the roadway with their lights on in order to keep general traffic away.[25]  Neither Officer Clark nor Officer Rose left the vehicle.[26]  A nearby officer was laying out spike strips in the road to try and puncture Orn's tires.[27]  According to Officer Rose,

---

[18] Cochran Dec. at ¶ 7, Ex. 6, at 27:5-12.
[19] Cochran Dec. at ¶ 7, Ex. 6, at 28:13-15.
[20] Cochran Dec. at ¶ 7, Ex. 6, at 30:11-24.
[21] Cochran Dec. at ¶ 7, Ex. 6, at 30:11-24.
[22] Cochran Dec. at ¶ 7, Ex. 6, at 31:1-4.
[23] Cochran Dec. at ¶ 7, Ex. 6, at 32:6-10.
[24] Cochran Dec. at ¶ 7, Ex. 6, at 34:17-23.
[25] Cochran Dec. at ¶ 7, Ex. 6, at 33:2-17.
[26] Cochran Dec. at ¶ 7, Ex. 6, at 33:18-23.
[27] Cochran Dec. at ¶ 7, Ex. 6, at 35:15-22.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **6** of **49**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Than Orn, still only traveling at or about 30 m.p.h. swerved his vehicle **away** from the officer deploying the spike strips rather than drive at him.[28]  At the time Orn's vehicle swerved around the spike strips, there was no oncoming traffic and no danger in his pathway.[29]  In addition, Orn's speed continued to be a "pretty low speed" between approximately 30-35 m.p.h.[30]

> ### 2.  Officers Clark and Rose Cut Through the Apartment Complex to Get in Front of Orn.

After paralleling Orn's vehicle, Officers Clark and Rose heard over the radio that Orn's vehicle was registered to an apartment at the Valley Vista apartment complex just off Tacoma Mall Boulevard.[31]  At the time, the patrol cars following Orn were at the south entrance of the apartments.[32]  Officers Clark and Rose pulled into the north entrance to get in front of Orn.[33]

> ### 3.  Officer Clark Sets Up a Roadblock and Disobeys Commands to Stay in His Car, Compelling a Confrontation and the Use of Deadly Force.

Once he was inside the parking lot of the Valley Vista apartment complex, Officer Clark positioned his vehicle in the thoroughfare of the main parking lot near the north entrance so that the front of his vehicle was near a grassy island that butted out into the parking lot.[34]  In an interview with Than Orn's criminal trial counsel, Tom Balerud, Officer Clark explained that his "strategy was to find a point that we could utilize our vehicle to prevent the suspect [Than

---

[28] Cochran Dec. at ¶ 7, Ex. 6, at 36:10-16.

[29] Cochran Dec. at ¶ 7, Ex. 6, at p. 39:8-22.

[30] Cochran Dec. at ¶ 7, Ex. 6, at 41:20-25, 42:1-2.

[31] Declaration of TPD Officer Kristopher Clark at ¶¶ 7-8.  Dkt. 92.

[32] Cochran Dec. at ¶ 7, Ex. 6, at 44:19-25.

[33] Declaration of TPD Officer Kristopher Clark at ¶ 8.  Dkt. 92; Cochran Dec. at ¶ 7, Ex. 6, at 44:23-25; 45:5-7.

[34] Cochran Dec. at ¶ 7, Ex. 6, at 46:1-7.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **7** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Orn] from leaving the parking lot."[35] Clark explicitly stated that he "knew there was one exit

out of that apartment complex when you're going northbound" and that he "did block a[sic]

exit."[36]  Clark further agreed that his full-size SUV was big enough to block the exit.[37]

In the criminal trial in which Than Orn was acquitted of assault, Clark testified:

[A]     When we went into the parking lot we ultimately went
        into the apartment complex and blocked a narrow point
        of the parking lot.

…

[Q]     When you drove your vehicle into the parking lot and
        parked it in that location, what were you trying to do?

A       When I stopped in that location, I was trying to stop Mr.
        Orn so that we could apprehend him.  And I was trying
        to stop any citizens from, you know, accidentally again
        entering into his path of flight.

Q       Did you believe you had accomplished that?

A       Yes.

Q       Did you believe there was any way the defendant could
        get through?

A       No.[38]

Other officers concur that Officer Clark's vehicle was a roadblock.  Officer Clark's

partner, Officer Rose, described Officer Clark's vehicle positioning as "effectively cut[ting] off

[35] Cochran Dec. at ¶ 8, Ex. 7, at 26: 1-3 (Balerud Interview of Officer Kristopher Clark Prior to Criminal Trial).

[36] Cochran Dec. at ¶ 8, Ex. 7, at 28: 2, 5-6.

[37] Cochran Dec. at ¶ 8, Ex. 7, at 28: 12-14.

[38] Cochran Dec. at ¶ 9, Ex. 8, at 211:3-5, 216:16-25, 217:1-2. (Trial Transcript of TPD Officer Kristopher Clark).

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1  northbound travel through the parking lot right there."[39]  Officer Daniel Bortle described Officer

2  Clark's SUV as facing in an east-westerly position and blocking the roadway.[40]

3          Officer Richard Kim, who was immediately behind Orn as he was traveling through the

4  apartment complex, also testified that he viewed Clark's vehicle blocking the roadway.[41]

5  Officer Kim further testified Than Orn's actions did not justify Officer Clark's use of a

6  roadblock.

7

8          [A]      As far as I can recall, the department has never allowed
9                   roadblocks to be a regularly-used technique or tactic.

10         Q        And in fact, the only time that a roadblock is allowed
11                  under Tacoma Police Department policy is when there's
                    the necessity of using deadly force, right?

12         A        That's correct.

13         Q        And you testified before that at least when you came to
14                  the front of the line and you were the next car behind
                    Than Orn, that he was actively resistant and not life-
15                  threatening in his subject actions; is that right?

16         A        That's correct.

17         Q        So am I correct that, at least according to your
18                  observations as the lead pursuit car, there was no
                    reasonable use of a roadblock to stop Than Orn on
19                  October [12]th of 2011, right?

20                  …

21

22

23

24  [39] Cochran Dec. at ¶ 7, Ex. 6, at 46:6-7.

25  [40] Cochran Dec. at ¶ 6, Ex. 5, at 46:15-20.

26  [41] Cochran Dec. at ¶ 10, Ex. 9, at 30:3-23 (Deposition of TPD Officer Richard Kim).

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **9** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

A       No.  That would be, in my opinion, no -- nothing that
        Mr. Orn did would, you know, necessitate a roadblock
        being used.[42]

Officer Kim also testified that he heard the direction over the radio that officers were
supposed to stay in their vehicles.[43]  Even TPD Chief Ramsdell, in reviewing both the Pursuit
Review Board's findings and the Use of Deadly Force Review Board's findings, agrees that
Officer Clark ignored the command to stay in his vehicle, and instead, used his car as a
roadblock.

[Q]     Were officers told to stay in their vehicles?

A       I believe they were.  I am not 100 percent sure, but I
        believe they were, by the sergeant.

Q       As you sit here today, under oath, is it your best
        understanding that the officers were indeed told to stay
        in their vehicles by the commanding officer, Sergeant Al
        Morris?

A       To the best of my understanding, yes.

Q       And Officer Clark did not do that, did he?

...

A       No, he did not.

Q       (By Mr. Cochran)  Instead, he set up a roadblock and
        then left his vehicle, correct?

...

A       Correct.[44]

---

[42] Cochran Dec. at ¶ 10, Ex. 9, at 29:5-25, 30:1-2.

[43] Cochran Dec. at ¶ 10, Ex. 9, at 31:9-15.

[44] Cochran Dec. at ¶ 11, Ex. 10, at 66:15-25, 67:1-5 (Deposition of TPD Chief Donald Ramsdell).

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP │ Page **10** of **49**

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

### 4. Officer Clark Immediately Got Out of His Ford Expedition.

2

Officer Clark admitted in his deposition that he also heard the direction to stay in his

3

patrol vehicle.

4

5      Q      Do you recall receiving direction, either from Sergeant
              Morris or from Canine Officer Dave Johnson, to stay in
6              your vehicle?

7      A      I don't know specifically who said it, but I do recall
              somebody saying, "Stay in your vehicles."[45]
8

9      …

10     Q      Why didn't you stay in your car?

11     A      Because I believed there was a potential that Mr. Orn
              was going to strike my vehicle, and I didn't want to be
12             on the receiving end of it.[46]

13

Officer Clark also stated, "[I] watched Mr. Orn drive through the thoroughfare passing

14

several turn offs and heading towards the driver's side of my patrol car.  Fearing that he was

15

going to ram the patrol car on the driver's side, I exited the vehicle and positioned myself about

16

10 feet away and out of Mr. Orn's path of travel."[47]

17

18

Once again, however, Officer Clark's partner, Officer Rose, remembers Officer Clark's

19

actions much differently.  Officer Rose testified that Officer Clark parked his patrol vehicle

20

blocking the road, did not say anything to Officer Rose, and then simply exited the vehicle

21

while Orn was still 75 to 100 yards away.[48]

22

23

---

24     [45] Cochran Dec. at ¶ 12, Ex. 11, at 105:10-14 (Deposition of TPD Officer Kristopher Clark).

       [46] Cochran Dec. at ¶ 12, Ex. 11, at 106:16-19.

25     [47] Declaration of TPD Officer Kristopher Clark at ¶ 11.  Dkt. 92.

26     [48] Cochran Dec. at ¶ 7, Ex. 6, at 47:9-11.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **11** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Q     If you were to estimate in yards, about how many yards
      away was Than Orn's vehicle when you first noticed it
      when the vehicle in which you were -- had been
      traveling with Kristopher Clark was stopped?

A     Okay.  It was a pretty good chunk.  I'd say maybe 75,
      100 yards away.

Q     About a football field's distance?

A     About, give or take.

Q     And at that point Officer Clark had left the vehicle; is
      that right?

A     That's right.[49]

### 5. Orn's Vehicle Traveled Slowly Through the Apartment Complex and Came to a Pause or a Stop.

As Than Orn's vehicle entered the Valley Vista apartment complex, Officer Bortle, who was traveling in the caravan behind Orn with Officer Kim, K-9 Officer David Johnson, and Sgt. Morris, estimates that Orn traveled approximately 15 m.p.h.[50] Officer Bortle also testified that as Orn's vehicle approached Clark's Expedition, "[f]or just a brief second the vehicle did pause."[51]

Officer Kim, travelling immediately behind Orn, testified in Than Orn's criminal trial and in his deposition for this action that Orn was traveling very slowly in the apartment complex.[52] Officer Kim then observed Orn's vehicle come to a stop.

---

[49] Cochran Dec. at ¶ 7, Ex. 6, at 52:20-25, 53:1-5.

[50] Cochran Dec. at ¶ 6, Ex. 5, at 45:7-10.

[51] Cochran Dec. at ¶ 6, Ex. 5, at 49, l.5.

[52] Cochran Dec. at ¶ 10, Ex. 9, at 41:23-25, 42:1-4.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP   |   Page **12** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

[Q]   So as he's slowly approaching Officer Clark's vehicle,
       Mr. Orn's white Mitsubishi SUV actually comes to a
       stop, correct?

A     Correct.

Q     Okay.  About how far away was he from Officer Clark
       at that point?

A     I'd say probably more than a car length, not much
       more.[53]

…

Q     Okay.  So –

A     20 to 25.

Q     20 to 25 feet away.  And was it a full stop that he came
       to?

A     I recall it being a full stop, yes.

Q     In fact, you testified that it was at least a few seconds; is
       that right?

A     Yes.[54]

### 6.   Orn Drove Away from Officer Clark and Around Clark's Ford Expedition

It is undisputed that as he approached Officer Clark's Ford Expedition, Than Orn drove

away from where Officer Clark had positioned himself, and instead drove onto a grass planting

strip around Clark's vehicle and opposite of where Clark was standing.[55]  Officer Steven Butts,

who also came in at the north entrance of the apartment complex, arrived in his patrol car at

---

[53] Cochran Dec. at ¶ 10, Ex. 9, at 42:5-12.

[54] Cochran Dec. at ¶ 10, Ex. 9, at 42:16-25, 43:1-8.

[55] Cochran Dec. at ¶ 13, Ex. 12 (Total Station Diagram).



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

approximately the same time as Officers Clark and Rose and parked his vehicle just north of where Clark's Expedition was blocking the road.[56]   Officer Butts stayed in his patrol vehicle behind Officer Clark's vehicle but could see Orn's caravan coming forward.[57]   He watched as Than Orn's vehicle was coming closer to Officer Clark's blocking vehicle.   Orn was traveling "maybe five miles an hour when it slowed.[58]   Then Orn either stopped or slowed down substantially before Officer Clark's vehicle.   Butts watched the Orn vehicle drive away from where Clark had positioned himself, and then up on the grass planting strip.   Officer Butts testified that Orn's vehicle was going very slowly, 3-4 m.p.h., as it went onto the grass and back down again.[59]   As Orn was driving on the grass planting strip, Butts intentionally backed his car up seeking to cut off any route for Than Orn to escape.[60]   After doing so, Orn's vehicle, still traveling 4 m.p.h. according to Butts, came into contact with the front push bar of Butts's car.[61] Butts heard plastic crunching and felt a jarring of the vehicle, but the impact was so minor that it didn't actually move Butt's vehicle.[62]

---

[56] Cochran Dec. at ¶ 14, Ex. 13, at 356:9-25, 358:2-5 (Trial Transcript of TPD Officer Steven Butts).

[57] Cochran Dec. at ¶ 14, Ex. 13, at 360:20-25, 361:1-6.

[58] Cochran Dec. at ¶ 14, Ex. 13, at 361:3-6.

[59] Cochran Dec. at ¶ 14, Ex. 13, at 389.

[60] Cochran Dec. at ¶ 14, Ex. 13, at 380:24-25, 381:1-2.

[61] Cochran Dec. at ¶ 14, Ex. 13, at 376:14-16.

[62] Cochran Dec. at ¶ 14, Ex. 13, at 380:2-9.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **14** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### 7. Orn's Vehicle did not Accelerate Hard Prior to the Shooting

As he was coming through the narrow entrance, Orn also made contact with the rear bumper of Officer Clark's Expedition.[63]  Officer Rose, who was still in the vehicle, called the contact from Orn a glancing blow.

> Q     And you said in fact the vehicle that you were in, you
>         and Officer Clark, didn't move much at all when Than
>         Orn hit the vehicle; right?
>
> A     Correct.
>
> Q     So it wasn't a particularly powerful blow; right?
>
> A     Again, it was a glancing blow, correct.
>
> Q     But a glancing blow that didn't move your vehicle
>         much?
>
> A     It didn't seem to significantly shift the vehicle no.[64]

Officer Clark states that he moved from the grass median where he was standing (opposite of the grass patch Orn drove on), to a position either at or behind his vehicle's bumper on the passenger side.[65]  Clark further states that he was positioned "out of [Orn's] direct path of travel.[66]  However, neither of the officers immediately in the area, Rose or Butts, saw Officer Clark.[67]

---

[63] Cochran Dec. at ¶ 15, Ex. 14.

[64] Cochran Dec. at ¶ 7, Ex. 6, at 57:15-22.

[65] Declaration of TPD Officer Kristopher Clark at ¶¶17-18.  Dkt. 92.

[66] Declaration of TPD Officer Kristopher Clark at ¶¶17-18.  Dkt. 92.

[67] Cochran Dec. at ¶ 14, Ex. 13, at 379:3-11.

PLAINTIFFS' TRIAL BRIEF



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

2       Officer Clark claims he then saw Orn's vehicle turn towards him and the vehicle

3   accelerated at him.  Officer Clark also states that at that same moment, he "could hear the engine

4   of [Orn's] vehicle under hard acceleration."[68] [69] Clark doesn't explain how but, despite his

5   position behind the bumper, he claimed the vehicle was now coming at him.[70]  Officer Clark

6   then claims that he extended his left arm to brace for the impact of Orn's vehicle and began to

7   move backwards.[71]  He claims he believed that Orn was trying to run him over, and because of

8   his close proximity to Orn's vehicle, he had to raise his pistol and fire downward while his left

9   hand remained on Orn's vehicle.[72]

10      Officer Butts, who approximates that he was no more than eight feet from Clark's

11  vehicle, did not see Officer Clark get struck by Orn's vehicle.[73]  Officer Butts watched Orn's

12  vehicle traveling right in front of him, going 3-4 m.p.h. as it was coming off the grass, but

13  Officer Butts <u>did</u> <u>not</u> <u>see</u> Clark reach out his hand and touch the car.[74] [75]  He just heard shots

14  being fired and glass shattering on Orn's vehicle.[76]  Officer Butts also testified to a much

15  different time sequence of the alleged hard acceleration by Than Orn's vehicle.  Rather than a

16

17

18  _____

19  [68]  Cochran Dec. at ¶ 16, Ex. 15, at 63:8-20 (Deposition of John Hunter).  Defendants' expert accident
    reconstructionist admits that "acceleration" just means the tire is moving forward.  And despite Clark's allegation
20  of "hard acceleration," Hunter's modeling had Orn's vehicle only going 10 m.p.h.

21  [69] Declaration of TPD Officer Kristopher Clark at ¶ 18.  Dkt. 92.

22  [70] Declaration of TPD Officer Kristopher Clark at ¶ 18.  Dkt. 92.

23  [71] Declaration of TPD Officer Kristopher Clark at ¶ 18.  Dkt. 92

    [72] Declaration of TPD Officer Kristopher Clark at ¶ 18.  Dkt. 92

24  [73] Cochran Dec. at ¶ 14, Ex. 13, at 378:5-23.

25  [74] Cochran Dec. at ¶ 14, Ex. 13, at 378: 5-23.

    [75] Cochran Dec. at ¶ 14, Ex. 13, at 368: 5-8, 369:4-7.

26  [76] Cochran Dec. at ¶ 14, Ex. 13, at 369: 1-13.

PLAINTIFFS' TRIAL BRIEF



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

"hard acceleration" before shots were fired as claimed by Officer Clark, Officer Butts heard the

hard acceleration <u>only</u> <u>after</u> Clark fired his gun.

> Q      … What did the defendant's vehicle do after you heard
> the shots fired?
>
> A      Saw the window breaking and then I remember hearing
> the engine rev distinctly and it accelerated rapidly
> eastbound, hit the fence and got stuck up on the fence.[77]
>
> …
>
> Q      And the acceleration you heard was after my client had a
> bullet in his spine?
>
> A      It was after I heard shots fired, yes.
>
> Q      And not just the sound of acceleration, but the visual of
> acceleration followed contact with your vehicle, which
> followed -- followed the shots, the acceleration followed
> the shooting?
>
> A      Correct.
>
> Q      Lastly, did you hear Officer Clark say anything prior to
> shooting my client?
>
> A      Not that I recall.[78]

## D.      Officer Clark Chased After Orn Firing His Weapon

Officer Clark has described his second volley of shots at the Orn vehicle as being fired

because he was in fear for the safety of his partner, Officer Donald Rose.  "I believed that Mr.

Orn had just assaulted me with a deadly weapon and that he would intentionally try and run

---

[77] Cochran Dec. at ¶ 14, Ex. 13, at 369: 9-13; 376:7-13.

[78] Cochran Dec. at ¶ 14, Ex. 13, at 381: 13-23.



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

other officers over, and therefore, I believed that Mr. Orn was an imminent threat to my partner. Therefore, I fired five or six more times, in rapid succession, at Mr. Orn through the back window of his SUV."[79]  Officer Rose, however, was inside the Ford Expedition and never exited the patrol vehicle until after Than Orn was shot.  More importantly, Officer Rose does not recall his partner, Officer Clark, ever telling him about his concerns for Officer Rose's safety.  Instead, the only safety concern Officer Clark told Officer Rose about was his own, even as Orn's vehicle was moving away.

> Q  And to the best of your recollection as you sit here today, in your conversation with Officer Clark he said that the reason he fired was fear of his own safety?
>
> A  I believe so.
>
> Q  And based on your training and experience as a Tacoma Police Department officer for the past more than eight years – right?
>
> A  Mm-hm.
>
> Q  -- would you consider your own safety to be in danger from a fleeing vehicle that was moving away from you?
>
> A  At that time, no.[80]

Officer Robert DeNully told investigators that as he pulled into the northern entrance of the Valley Vista Apartments, parked north of where Officer Clark had parked his Expedition,

---

[79] Declaration of TPD Officer Kristopher Clark at ¶ 19.  Dkt. 92

[80] Cochran Dec. at ¶ 7, Ex. 6, at 62: 21-25, 63:1-5, 68:15-25, 69:1.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

and exited his vehicle, he saw Officer Clark running and shooting.[81] "He was running towards the direction of the suspect vehicle was (sic)."[82]

Chief Donald Ramsdell, in his administrative review of the Use of Deadly Force Review Board's finding, confirmed two things:    1) That Officer Clark's official statement to investigators about his safety were different than what he told his partner, Officer Rose; and 2) No one, not Clark, Rose or anyone else, was in the path of danger while Officer Clark was "running and shooting," as Officer DeNully described it, as Than Orn's vehicle was moving away.

> Q    In the second volley of shots from Officer Clark to Than Orn, he didn't indicate that he was afraid for his own safety, did he, to the best of your recollection?
>
> A    To the best of my recollection, he was fearful for others, as I indicated earlier, whether they were officers or other individuals.
>
> Q    Are you aware of any individuals who were in the pathway of Than Orn when Kristopher Clark was firing the second volley of shots?
>
> A    I am not.
>
> Q    And are you aware of any other officers that were in the path of Than Orn when Kristopher Clark fired his second volley of shots?
>
> A    I am not, no.

---

[81] Cochran Dec. at ¶ 17, Ex. 16.
[82] Cochran Dec. at ¶ 17, Ex. 16.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **19** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1
2

Q Is it your belief that there was anyone from the public who was in the pathway of Than Orn when Kristopher Clark fired his second volley of shots?

3
4

A That was not -- no.  My recollection is that -- my understanding is there was no other individuals in the way.[83]

5
6
7

**E. Palm Prints on Orn's Vehicle Could Not Be Linked to Officer Clark, No Other Officers Observed the Alleged Touch, and Clark Fired at Than Orn's Vehicle When There Was No Direct Threat to Him.**

8

In addition to the multiple, significant differences between what Officer Kristopher

9

Clark told investigators versus what others observed and the admissions Clark made to his

10

partner, Officer Donald Rose, the objective evidence does not support Clark's claims about the

11

shooting of Than Orn.  First, Detective Gene Miller, the detective tasked with investigating the

12

shooting scene, testified that Kristopher Clark's alleged palm print on the side of the Orn vehicle

13

could not be conclusively matched to Officer Clark.[84]  "Other than the information from Officer

14

Clark and the presence of the palm print, handprint, whatever it was, that couldn't be

15
16

conclusively linked to him, and some point of Mr. Orn's statement, where he said he saw the

17

officer advancing on his vehicle, or what he believed to be advancing on his vehicle.  There

18

were no other officers that observed Officer Clark get struck or that type of thing."[85]

19
20

Second, the objective evidence showed that Than Orn's vehicle was not a threat to

21

Officer Kristopher Clark at any point when he fired because Orn's vehicle was already passing

22

by.

23
24

[83] Cochran Dec. at ¶ 11, Ex. 10, at 63:5-24.

25

[84] Cochran Dec. at ¶ 18, Ex. 17, at 86:13-24 (Deposition of TPD Detective Gene Miller).

26

[85] Cochran Dec. at ¶ 18, Ex. 17, at 86:13-24.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **20** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Q      And I'm most interested in the objective evidence as you
       reviewed it.  Was there any immediate threat to Officer
       Clark as he was firing his weapon at Than Orn?

A      In the moment that he's firing the weapons, he's already
       to the side and subsequently to the back of the vehicle.
       So that threat, based on that information, no longer
       exists.[86]

…

Q      The objective evidence shows that there was no
       immediate threat to Officer Clark, to any member of the
       public, or any member of the Tacoma Police Department
       at the time that he was firing at Than Orn; correct?

A      No immediate threat in that moment in time.[87]

Third, the defendants' ballistic expert has testified that the angle of the first volley of shots shows that the paralyzing shot to Than Orn's back from the passenger-rear window was fired between 2 feet and 4 feet away from the side of the car, contradicting Officer Clark's claims that he was touching Orn's vehicle as it was passing him.[88]

## F.      TPD Response

### 1.      Pursuit Review Board – Failure to Yield.

The City of Tacoma's Pursuit Review Board met on March 28, 2012, to listen to the audio tape of the incident involving the TPD and Than Orn as provided by the Law Enforcement Support Agency (LESA), and reviewed supplemental reports.[89]  The Board used two operative

---

[86] Cochran Dec. at ¶ 18, Ex. 17, at 79:6-12.

[87] Cochran Dec. at ¶ 18, Ex. 17, at 79:16-20, 131:21-25, 132:1-15.

[88] Cochran Dec. at ¶ 19, Ex. 18, at 41:3-11 (Deposition of Matthew Noedel).

[89] Cochran Dec. at ¶ 20, Ex. 19 (Pursuit Review Board Incident #11-357-1063, Pursuit Review Board Committee Minutes and Bureau Level Complaint (2))

PLAINTIFFS' TRIAL BRIEF

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

definitions in its review.[90]  According to TPD's Pursuit Review Committee Report, a Vehicle Pursuit is:  An active attempt by an Officer to apprehend a suspect who willfully fails to immediately bring his or her vehicle to a stop, and drives in a reckless and evasive manner while attempting to elude a pursuing police vehicle.[91]  According to the same report, a Failure to Yield is:  Where an Officer signals a driver to stop, and the driver fails or refuses to immediately bring his or her vehicle to a stop, *and drives in a manner that is not reckless and does not pose an immediate threat to community safety*.[92]  On April 25, 2012, the Board rendered its disposition of the incident review as a "Failure to Yield," determining Orn's driving as "not reckless" and not posing "an immediate threat to community safety."[93]  In addition, the Board levied the following training recommendations: 1) Continue with PIT (Pursuit Immobilization Technique) training for all Officers; 2) Radio communication regarding information that should be relayed i.e., speed, direction of travel, conditions of roadways, reason for attempted stop; 3) Number of vehicles involved should stay within policy and others should parallel the incident; and 4) Supervisor to give clarifying direction to units involved in pursuit and if the Supervisor is in the lead position it should be handed off to another unit as soon as practical.  *Id.*

Regarding the number of TPD which responded to this "failure to yield," TPD policy 3.2.2, Vehicle Pursuit Operations, states that, "No more than three patrol units should be committed as pursuit vehicles, unless the supervisor or primary unit specifically advises that

---

[90] Cochran Dec. at ¶ 20, Ex. 19.

[91] Cochran Dec. at ¶ 20, Ex. 19.

[92] Cochran Dec. at ¶ 20, Ex. 19 (emphasis added).

[93] Cochran Dec. at ¶ 20, Ex. 19.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **22** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

additional units are needed to safely affect the arrest of the suspect or suspects."[94]  Here, twenty-two (22) vehicles[95] responded to Sgt. Morris's reports of a failure to yield.[96]  And although the exact number of vehicles that were actually in the caravan pursuing the Orn vehicle cannot be precisely determined, TPD Assistant Chief Kathy McAlpine admitted that it was a "big response."[97]

Interestingly, the decision of the pursuit review board to label the on-the-road incident involving Than Orn's vehicle as a "failure to yield" was not unanimously supported.  Based on his understanding of the facts and TPD policy that existed at the time of the shooting in October 2011, Assistant Police Chief Michael Ake testified that he believed the chase of Than Orn was indeed a pursuit, and most importantly, **"[W]e (TPD) shouldn't have allowed that pursuit**."[98]  Assistant Police Chief Kathy McAlpine and Chief of Police Donald Ramsdell both agreed with Chief Ake, that it was an **out-of-policy pursuit**.[99]

### 2.  Use of Force Review Board – Retraining Required.

On May 10, 2012, TPD's Use of Deadly Force Review Board met to consider whether Officer Kristopher Clark's use of deadly force against Than Orn was "reasonable and within Department policy."[100]  The final decision was ratified and approved by Chief of Police Donald

---

[94] Cochran Dec. at ¶ 21, Ex. 20 (TPD policy 3.2.2).

[95] Cochran Dec. at ¶ 22, Ex. 21 at 40: 24-25, p. 41:1-3 (Deposition of TPD Assistant Chief Kathy McAlpine).  One Pierce County Sheriff's Office vehicle and one Lakewood Police Department vehicle also responded apparently as self-deployed units.

[96] Cochran Dec. at ¶ 22, Ex. 21 at 41:4-16.

[97] Cochran Dec. at ¶ 22, Ex. 21 at 41:4-16.

[98] Cochran Dec. at ¶ 23, Ex. 22 at 66:4-7 (Deposition of Michael Ake) (emphasis added).

[99] Cochran Dec. at ¶ 11, Ex. 10 at 12:1-14.

[100] Cochran Dec. at ¶ 24, Ex. 23 (Use of Deadly Force Review Board Findings).

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Ramsdell.[101]  Although the Board found Officer Clark's actions to be within Department Policy, the Board included retraining requirements for Officer Clark which included recommendations to re-train in the areas of "Positioning Self Once Exiting His Patrol Vehicle" and "Environmental Awareness and Location within Potential Deadly Circumstance (Vehicle Position Angle-Positional reactions."[102]

Despite the recommendations for retraining, Officer Clark testified at his deposition that he did not receive specific retraining on these training recommendations, and he never talked with either Chief Ramsdell or Asst. Chief Ake about the shooting.[103]

## G.    Orn "Not Guilty" of Assault of Kristopher Clark

In the wake of the shooting, the Pierce County Prosecutor's office, working together with TPD Detective Gene Miller, brought criminal charges against Than Orn seeking to convict Orn of Assault 2 for the alleged touching of Officer Clark with his vehicle and Felony Eluding.[104]  After five days of testimony, the jury came back with "Not Guilty" verdicts for both the assault charge and felony eluding.[105]  Orn was acquitted of the assault charge against Officer Clark but convicted of the misdemeanor of "Failing to Obey a Law Enforcement Officer."[106]  He was assessed a $250.00 fine.[107]

## H.    TPD Chief of Police Donald Ramsdell Ratified the Use of Force Review Board's

---

[101] Cochran Dec. at ¶ 24, Ex. 23.

[102] Cochran Dec. at ¶ 24, Ex. 23.

[103] Cochran Dec. at ¶ 12, Ex. 11 at 171:6-25, 172:1-16, 173:6-11.

[104] Cochran Dec. at ¶ 18, Ex. 17 at 38:5-20.

[105] Cochran Dec. at ¶ 25, Ex. 24 (Verdict Forms, *State v. Orn*).

[106] Cochran Dec. at ¶ 26, Ex. 25 (Acquittal, Judgment and Sentence, *State v. Orn*).

[107] Cochran Dec. at ¶ 26, Ex. 25.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **24** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

**Determination and Admitted that TPD Officers Violated TPD Policies.**

The City's Chief of Police, Donald Ramsdell, admitted during his deposition that through his concurrence therewith, the Use of Force Review Board's determination that Clark's use of force was within department policy became the decision of the Tacoma Police Department:

> Q    But as the ultimate—you ultimately received the review
>      board's findings, correct, as chief of police?
>
> A    Correct.[108]
>
> Q    And you ultimately received the use of deadly force
>      findings as well, correct?
>
> A    Correct.
>
> Q    And did you have to ultimately accept those findings?
>
> A    Ultimately it was my review and determination to concur with the review
>      board's findings, in which I did.
>
> Q    So you concurred with the review board's findings, and
>      so that became an actual decision of the Tacoma police
>      department when you concurred with the review board's
>      findings, correct?
>
> A    Correct.[109]

Chief Ramsdell also made the following admissions during his deposition testimony.

---

[108] Cochran Dec. at ¶ 11, Ex. 10, at 44:23-25.

[109] Cochran Dec. at ¶ 11, Ex. 10, at 45:1-11.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **25** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

2

**1. Chief Ramsdell Admits that TPD Policy Only Allowed Roadblocks in Situations Permitting the Use of Deadly Force.**

3

Chief Ramsdell admitted under oath that pursuant to TPD policy 15.08.001,[110] which

4

dated back all the way to at least 1996, roadblocks, like the one used by Kristopher Clark on

5

October 12, 2011, with Than Orn, were only meant for situations which already justified an

6

officer's use of deadly force.

7

8

     Q      Chief, what was the policy for using a TPD vehicle as a blocking-- a road-blocking mechanism, at that time?

9

     ...

10

11

     A      Typically roadblocks fall under a scenario where officers would be in a position to use deadly force as a roadblock-- as an offensive situation, much like a PIT maneuver, wherein officers are set up to try to stop the vehicle.

12

13

14

             I believe in our policy, it basically states that it is used in instances where an officer would be using deadly force—

15

16

     Q      (By Mr. Cochran)  It's a last-ditch effort, right?

17

     A      Yes.[111]

18

     …

19

20

     Q      What is it about a roadblock, as you understand it, as chief of police for the Tacoma police department, that necessitates a special instruction that it should not be employed, except as a last resort necessitating the application of deadly force to a life-threatening suspect?

21

22

23

24

25

[110] Cochran Dec. at ¶ 27, Ex. 26 (TPD Policy 15.08.001).

26

[111] Cochran Dec. at ¶ 11, Ex. 10, at 16: 7-20, 20:16-25; 21:1-9.

PLAINTIFFS' TRIAL BRIEF



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

2

A My interpretation would be that the officers are potentially putting their own lives at risk.

3

4

Q But what is it specifically about using a roadblock that Tacoma police department officers should only use that in a last resort?

5

6

A Because that would be the last resort of trying to stop an individual that is an imminent threat of death or serious bodily injury to officers and/or the public.[112]

7

8

**2. Officer Clark Used His Patrol Vehicle as a Roadblock Even Though There Was No Justification for Using Deadly Force Against Than Orn.**

9

10

11

Q So you would agree that in the review of the facts in the case, the use of deadly force review board concluded, based on their review, that the officers were blocking the roadway, right?

12

...

13

A Yes.[113]

14

…

15

16

17

[Q] Would you agree with me that based on Officer Rose's statement, Officer Clark's statement, by the summary of the use of deadly force review board, that Officer Clark positioned his vehicle in a way to block Than Orn?

18

A It appeared from the documentation, yes.[114]

19

…

20

21

[Q] Would you agree with me that [Orn] was not a life-threatening suspect at the time that Officer Clark

22

23

24

25

26

---

[112] Cochran Dec. at ¶ 11, Ex. 10, at 23:13-25, 24:1-4.

[113] Cochran Dec. at ¶ 11, Ex. 10, at 17:24-25, 18:1-5.

[114] Cochran Dec. at ¶ 11, Ex. 10, at 20: 24-25, 21:1-4.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **27** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

positioned his vehicle so that it blocked the thoroughfare in the apartment complex?[115]

…

A    He was not a life-- from my understanding and my review, in regards to the pursuit, it didn't appear that he was a life-threatening subject at that time of the pursuit.[116]

### 3. Officer Clark's Patrol Vehicle Roadblock Was Against TPD Policy and Fell Below Chief Ramsdell's Expectations.

Q    Would you agree that based on the documents that you've reviewed, the documents that I've showed you here today, including the statement of Officer Clark and the recorded statement of Officer Rose, that Officer Clark put his vehicle in a blocking position to Than Orn's thoroughfare?

A    Yes.

Q    And would you agree that this was not a life-threatening situation, such that it called for a blockade of Than Orn's thoroughfare?

...

A    The circumstances that led up to it may not have justified the roadblock.[117]

…

[Q]    Would you agree that Officer Clark's use of his vehicle to block the road, in the incident involving Than Orn, fell below your expectations as chief of police for a Tacoma police department officer?

---

[115] Cochran Dec. at ¶ 11, Ex. 10, at 23:1-4.

[116] Cochran Dec. at ¶ 11, Ex. 10, at 23:10-12.

[117] Cochran Dec. at ¶ 11, Ex. 10, at 25:17-25, 26:1-5.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1      A      Yes, given the circumstances on the particular tactics, in
2      relation to our policies.[118]

3      …

4      Q      Would you agree that his actions, using the vehicle to
5      block the road, involving the incident with Than Orn, was a violation of policy?

6      …

7      A      By strictly looking at the policy, yes.[119]

8      …

9      Q      Would you agree with me that on a more probable than
10      not basis, had Officer Clark not blocked the road, he
11      would not have been in the position where he felt he needed to use deadly force?

12      …

13      A      Possibly.[120]

14      …

15      [Q]    Did Kristopher Clark put his own life in jeopardy by
16      positioning his vehicle in the way that he did in the
17      apartment complex involving the incident with Than Orn on October 12th, 2011?

18      …

19      A      He could have, yes.

20      Q      He put his partner's life in jeopardy by placing the
21      vehicle the way that he did in the incident involving
22      Than Orn on October 12th, 2011, didn't he?

23

24

25

26

---

[118] Cochran Dec. at ¶ 11, Ex. 10, at 30:23-25; 31:1-3.

[119] Cochran Dec. at ¶ 11, Ex. 10, at 32:1-6.

[120] Cochran Dec. at ¶ 11, Ex. 10, at 33:4-14.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1     A     He could have, yes.[121]

2     …

3     Q     And based upon the definition that you've-- the policy
4             that we've read over and over again, [Officer Clark] put
             Than Orn's life and safety in jeopardy by positioning the
5             vehicle the way that he did on October 12th, 2011 in the
             parking lot in the incident involving Than Orn, didn't
6             he?

7     …

8     A     He could have.

9     Q     And he did ultimately use deadly force on Than Orn,
10          didn't he?

11     A     Yes, he did.

12     Q     And based upon your review of the facts and
             circumstances of this case, and the concurrence that you
13          ultimately gave to both the pursuit review board's
             findings and the use of deadly force review board's
14          findings, would you agree that Kristopher Clark's use of
             deadly force was a result of his positioning the vehicle
15          the way that he did on October 12th, 2011?

16     …

17
     A     It could have.[122]
18

19     **4.   According to Chief Ramsdell, Officer Clark's Use of Roadblock to Stop Than Orn Was Not Reasonable.**
20

21     Q     So just so that I'm perfectly clear, Kristopher Clark's use
             of a roadblock was not reasonable when Than Orn drove
22          into the parking lot on October 12th of 2011?

23

24     ———————————————

25     [121] Cochran Dec. at ¶ 11, Ex. 10, at 51:10-20.

26     [122] Cochran Dec. at ¶ 11, Ex. 10, at 51:24-25, 52:1-21.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **30** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1    A    If the intention was on Officer Clark's circumstances-- if
2          the intention was a roadblock as opposed to something
          else, as a containment.

3    Q    What is the difference between a roadblock and a
4          containment?

5    A    A containment is trying to contain a subject or suspect,
          whether they're on foot-- typically most of the times
6          when they're on foot-- we have a containment in case an
          individual suspect gets out of a vehicle, starts running,
7          we set up a containment for that individual not to be able
8          to-- we have officers assigned at the perimeter or inner
          perimeter, outer perimeter for the employment of a
9          canine, if necessary, and/or getting the individual into
          custody by cutting off any avenues that he or she may
10        have.

11   Q    But here Than Orn wasn't on foot, right?

12   A    Correct.

13   Q    Is there anything that you have reviewed, in your
14        concurrence on the ultimate findings of each of the
         review boards, that leads you to believe that this was a
15        containment by Kristopher Clark?

16   A    Just the wording within the review boards' findings.
17        They were trying to contain him within the parking lot.

18   Q    But they actually blocked his avenue of egress, correct?

19   A    Could you ask that again, please?

20   Q    They blocked his avenue of egress, correct?

21   A    Correct, they attempted to.

22   Q    And they did, right?  He ultimately drove around them?

23   A    Correct.

24   Q    And the use of the roadblock, with regard to Than Orn,
25        is not in keeping with the use-of-force model employed
         by the Tacoma police department at that time, correct?

26

PLAINTIFFS' TRIAL BRIEF

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1    …

2         A     As reflected in the policy, by virtue of the policy, correct.[123]

3    **I.     Than Orn's Permanent Paralysis and Medical Treatment.**

4
5         Plaintiff Than Orn was struck multiple times in the neck, right shoulder and back, by

6    Defendant Clark's gunshots.[124]   According to medical reports, Than Orn suffered complete

7    spinal cord injury at the first lumbar vertebra due to a bullet lodged in his spine.[125]   He also

8    suffered severe cervical spine trauma including fractures of the fourth, fifth and sixth vertical

9    vertebrae transverse process, as well as a fracture to his right scapular.[126]   He has undergone

10   extensive medical treatment in regards to caring for his wounds.   Ultimately, Plaintiff Than Orn

11   underwent a bilateral above the knee double leg amputation, as he was never expected to

12   recover any function below the L1 level of his spine and the constant risk of infection in his

13   legs posed a mortal risk to his health.[127]

14
15   **J.     Destruction of the parent-child relationship between Than Orn and his children J.O., C.O., and Thalisa Orn.**

16
17        Following the shooting, Plaintiff Than Orn's marriage disintegrated.[128]   He further lost

18   time and contact with his children, resulting in the destruction of the parent-child

19
20
21   _____

22   [123] Cochran Dec. at ¶ 11, Ex. 10 at p. 49:1-25, 50:1-16.

23   [124] Cochran Dec. at ¶ 28, Ex. 27, at 34 (clinic note from Dr. Michelle L. Strong, dated October 12, 2011).

     [125] Cochran Dec. at ¶ 28, Ex. 27, at 37-39.

24   [126] Cochran Dec. at ¶ 28, Ex. 27, at 38-39.

25   [127] Cochran Dec. at ¶ 29, Ex. 28 (clinic note from Dr. Nicholas D. Garcia).

     [128] Cochran Dec. at ¶ 2, Ex. 1, at 20:1-11, 151:12-25, 152:1-25, 153:1-12.
26

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

relationship.[129]  As a result, Plaintiffs J.O., C.O., and Thalisa Orn have lost the care, affection, companionship, society, support and consortium of their father.

### III.    LEGAL AND EVIDENTIARY ISSUES

#### A.  42 U.S.C. § 1983: Violation of Fourth Amendment as to Kristopher Clark

Kristopher Clark violated the Fourth Amendment's clearly established prohibitions against excessive force when he employed the use of deadly force against Than Orn for failing to yield or failing to obey instructions without any objectively reasonable belief that Orn posed an immediate threat of harm to himself or others.   Than Orn was unarmed and was not suspected of a violent criminal offense.  Moreover, Orn was driving out of the path of police officers at an extremely slow speed, but Clark affirmatively created a danger by unlawfully establishing a roadblock which endangered his partner officer, getting out of his vehicle against orders, drawing his gun, chasing the path of Orn's vehicle, and firing 10 rounds at Orn through the passenger side and rear of Orn's vehicle with deliberate indifference to the safety of Orn and those in the immediate vicinity.

The Fourth Amendment proscribes unreasonable searches and seizures.  *Franklin v. Foxworth*, 31 F.3d 873, 875 (9th Cir. 1994).  The reasonableness of a search or seizure depends "not only on *when* [it] is made, but also *how* it is carried out."  *Cameron v. Craig*, 713 F.3d 1012, 1021 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct.1694, 85 L.Ed.2d 1 (1985)).  "In other words, even when supported by probable cause, a search or seizure may be invalid if carried out in an unreasonable fashion." *Id.*

---

[129] Cochran Dec. at ¶ 2, Ex. 1, at 14:17-25, 15:1-4, 17:18-25, 18:3-9, 16-25, 19:1-9.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  ❘  Page **33** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

The reasonableness of a particular search or seizure must be "assessed by carefully considering the objective facts and circumstances that confronted the [involved] officer or officers." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir.1994) (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct.1865, 104 L.Ed.2d 443 (1989)). "While a court (or jury) may 'look to whatever specific factors may be appropriate in a particular case,' the Supreme Court has articulated three factors that courts should typically consider: (1) the severity of the crime at issue;(2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Cameron v. Craig*, 713 F.3d at 1021 (quoting *Franklin v. Foxworth*, 31 F.3d at 876, and citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). "Crucially, "[b]ecause questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Chew*, 27 F.3d at 1440 (citations omitted); *see also Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012).

Officer Clark intentionally used deadly force on Than Orn intending to injure or otherwise disable Orn from continuing to drive.[130]  Therefore, the applicable analysis here is that of a "seizure" subject to Fourth Amendment inquiry.  *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).  The Supreme Court has established that an officer's use of force, including deadly force, violates a Fourth Amendment right if it is excessive under objective standards of reasonableness.  *Scott v. Harris*, 550 U.S. 372, 382–83, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007); *see also Graham*

---

[130] Declaration of TPD Officer Kristopher Clark at ¶¶ 18-19.  Dkt. 92.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP │ Page **34** of **49**



*v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that a claim that a law enforcement official used excessive force in making an arrest, investigatory stop, or other "seizure" is judged under the Fourth Amendment's objective "reasonableness" standard).

The Fourth Amendment test is whether the force used in a seizure was "objectively reasonable." *Graham*, 490 U.S. at 388, 109 S.Ct. 1865; *see Espinosa v. City and County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). "Determining whether a particular use of force is reasonable requires the fact-finder to balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Boyd v. Benton County*, 374 F.3d 773, 778-779, (9th Cir. 2004). Accordingly, "[t]his balance must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

*Graham* lists the factors relevant to the merits of an excessive force claim: "requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The relevant question here under the Fourth Amendment analysis is whether the gunshots that struck Than Orn resulted from an objectively reasonable exercise of deadly force based on an examination of the totality circumstances. *Boyd,* 374 F.3d at 778-779. The key issue in this case is whether a reasonable officer would have perceived Than Orn's actions as an immediate threat of death or serious physical injury at the time Kristopher Clark shot Orn. This requires a factual examination of the totality of the circumstances which

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

lead to Officer Clark's decision to fire.[131]   The "settled and exclusive framework" for determining the reasonableness of excessive force is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure."   *County of Los Angeles v. Mendez*, 137 S.Ct. 1539, 1546 (2017) (quoting *Tennessee v. Garner*, 471 U. S. 1, 8–9.); *see also*, *Maddox on behalf of D.M v. City of Sandpoint*, 2:16-CV-00162-BLW, 2017 WL 4343031, at *13 (D. Idaho Sept. 29, 2017); *Felts v. Bd. of Cty. Commissioners of Valencia Cty.*, 13-CV-1094 MCA/SCY, 2017 WL 4480118, at *2–3 (D.N.M. Oct. 6, 2017).

It is routine for a police officer to prepare a statement, with the assistance of a union representative and counsel, which predictably claims that an officer who used deadly force did so because he was in fear for his own safety or the safety of others, just like Kristopher Clark did in this case.[132]   In fact, former TPD Detective Gene Miller testified that in every officer-involved shooting that he's worked, every officer has said that he or she perceived a direct threat to himself, a fellow officer or a member of the public.[133]   "Yes.  I can't think of any I investigated where that wouldn't be a true statement."[134]   For that reason, "A simple statement by an officer that he fears for his safety or the safety of others is not enough, there must be objective facts to justify such concern."   *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

---

[131] The reasonableness of a particular use of force cannot be determined through the application of mechanical rules because reasonableness must "be assessed by carefully considering the objective facts and circumstances confronting the officers," *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005). As such, determining whether a particular use of force was unreasonable is a highly fact specific inquiry.

[132] Cochran Dec. at ¶ 29, Ex. 28 (Statement of Kristopher Clark).

[133] Cochran Dec. at ¶ 2, Ex. 1, at p. 90:8-14.

[134] Cochran Dec. at ¶ 2, Ex. 1, at p. 90:8-14.



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

As demonstrated above, the testimony of other officers on scene and the physical evidence do not support Officer Clark's use of deadly force against Than Orn. Plaintiffs' expert law enforcement professionals do not support the use of deadly force in this case, either. Police expert and former Bellevue Police Chief D.P. Van Blaricom has opined that based on his training, experience and a careful evaluation of the totality of circumstances in this matter, Plaintiff Than Orn did not pose a significant threat of death or serious physical injury to either the shooter, Officer Clark, or others at the time he was shot, and the use of deadly force was both unnecessary and unreasonable.[135] Among the most critical points to Chief Van Blaricom's opinion is that indisputably, all of Clark's shot were into the right side and/or the right rear of Than Orn's vehicle: "1) Accordingly, [Clark] was standing to the right of the plaintiff's vehicle and firing as it passed him by, 2) Thereafter, [Clark] was standing at the rear of plaintiff's vehicle and continued to fire as it drove away from him[.]"[136]  Van Blaricom also takes issue with Officer Clark's suggestion that other officers and/or private citizens could *"possibly"* have become victims of plaintiff's further driving.[137]  "The standard of care for use of deadly force is probable cause to believe that a suspect poses a significant threat of death or serious physical injury to the officer or others.  Given the totality of circumstances known to the shooter, Officer Clark, there simply was no such *"probable cause"* and he cannot substitute *"possible"* for

---

[135] Declaration of D.P. Van Blaricom, at ¶11. Dkt 99.

[136] Declaration of D.P. Van Blaricom, at ¶11. Dkt 99.

[137] Declaration of D.P. Van Blaricom, at ¶11. Dkt 99.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **37** of **49**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

"*probable*" – if he could, literally any police shooting could/would be justified, regardless of the facts."[138]

Furthermore, Van Blaricom opines that Officer Clark intentionally and or recklessly provoked the unnecessary confrontation that resulted in Officer Involved Shooting (OIS).[139]

> Plaintiff was not creating a risk to anyone, when Clark established a roadblock to stop his further progress and, as previously quoted herein from TPD policy P3.2, such roadblocks are limited to *'a last resort necessitating the application of **deadly force** to a **life-threatening** (emphases in original) suspect'*… Clark's implementation of an unauthorized roadblock, followed by use of unreasonable deadly force, resulted in unarmed plaintiff being paralyzed for life.[140]

Plaintiffs' other police expert Edward "Tad" Leach,[141] former Undersheriff at the Kootenai County Sheriff's Department in Coeur d'Alene, Idaho, also found Officer Clark's use of force unreasonable based on a totality of the circumstances as prescribed by *Connor v. Graham*. "I am of the opinion… that Officer Clark's utilization of deadly force against Plaintiff Than Orn was unwarranted, excessive and that a reasonable officer in the same position would not have used his firearm whatsoever, let alone ten (10) to eleven (11) times."[142] Among many concerns Leach found with Officer Clark's specific actions, he found Officer Clark's

---

[138] Declaration of D.P. Van Blaricom, at ¶11. Dkt 99.

[139] Declaration of D.P. Van Blaricom, at ¶12. Dkt 99.

[140] Declaration of D.P. Van Blaricom, at ¶ 12. Dkt 99.

[141] Plaintiffs plan to call only one of their police practices experts at trial pursuant to Judge Leighton's prior ruling limiting Plaintiffs to one police practices expert. Dkt. 123 (Order on Plaintiffs' and Tacoma Defendants' Motions *in Limine*). Both their opinions are included herein because Plaintiffs are not certain whether Van Blaricom will be capable of testifying, thus requiring Plaintiffs to present testimony from Leach as an alternative.

[142] Declaration of Edward "Tad" Leach at ¶ 4. Dkt. 100.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP   |   Page **38** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1    explanation of where he was when he decided to use deadly force to be unreasonable.

> Orn's vehicle was passing or had passed Officer
> Clark when he utilized deadly force. A
> reasonable officer would not conclude that; "As
> Orn presented an immediate and continuing
> threat to me [Officer Clark], assisting officers
> and citizens, I believed deadly force was
> necessary to safely achieve control." Officer
> Clark acknowledged that he was at the passenger
> right quarter panel in line with the wheel.
> Therefore, any actual or perceived threat of
> being struck by Orn's vehicle was already over
> when Clark utilized deadly force.[143]

Here, as best exemplified in the audio recording of the Computer Aided Dispatch (CAD)[144] from the night of the incident and in the statements from the Chief of Police all the way down to patrol officers at the scene on October 12, 2011, TPD did not consider Than Orn to be a threat.  He failed to have his headlights on, which was a traffic violation, and then he failed to stop.  But, as TPD's own pursuit review board concluded, Orn was not acting recklessly.  Furthermore, although Officer Clark's prepared statement claims that he was concerned about his partner's safety, his partner, Officer Donald Rose, says that Clark never mentioned anything about Rose's safety, or anyone else's.[145]  Officer Clark's decision to shoot at Than Orn's vehicle was plainly unreasonable.

---

[143] Declaration of Edward "Tad" Leach at ¶ 11.  Dkt. 100.

[144] Cochran Dec. at ¶ 31, Ex. 30 (9-1-1 Transmission Transcript, 11UOF-0001).

[145] Cochran Dec. at ¶ 7, Ex. 6, at 62:21-25, 63:1-5, 68:15-25, 69:1.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **39** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1

2

**B.  42 U.S.C. § 1983: Violation of the Fourth and Fourteenth Amendment as to City of Tacoma – *Monell* Claim**

3

4

City of Tacoma violated the Fourth and Fourteenth Amendment.  Defendant City of

5

Tacoma and the Tacoma Police Department have customs, policies, and practices that amount

6

to deliberate indifference to the rights of persons with whom its officers regularly come into

7

contact, including nonviolent suspects like Than Orn.  Defendants City of Tacoma and the

8

Tacoma Police Department, with deliberate indifference, failed to train the Tacoma Police

9

Department's law enforcement officers and failed to adopt and implement policies for, among

10

other things, the use of de-escalation techniques, non-lethal tactics, proper nonviolent suspect

11

apprehension techniques, and the decision-making process that should accompany use of

12

deadly force.  The failure by Defendant City of Tacoma and the Tacoma Police Department to

13

adequately and appropriately train its officers and employee amounts to deliberate indifference

14

to the rights of the persons with whom the Tacoma Police Department's employees regularly

15

come into contact, including nonviolent suspects like Than Orn.  It was highly predictable that

16

Defendant's failures would result in constitutional violations, like those that occurred in this

17

case.  Plaintiff's permanently debilitating injuries are the foreseeable consequence of the

18

Tacoma Police Department's failure to equip its law enforcement officers with the necessary

19

training and tools to handle recurring situations, such as those involving a nonviolent suspect

20

failing to yield or failing to obey an officer's instructions.  The actions of the officers involved,

21

which deprived the Plaintiff of his Constitutional rights, conformed to official policy, custom,

22

and practice of Defendant City of Tacoma.  Defendant City of Tacoma and the Tacoma Police

23

Department's policy of shooting an unarmed individual failing to yield, but avoiding officers

24

25

26

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **40** of **49**



and driving at an extremely low speed is blatantly unconstitutional and jeopardizes the safety of all citizens, as evidenced by the police shooting of Than Orn.  Moreover, Defendant City of Tacoma has ratified the conduct of Defendant Clark in relation to the injuries of Than Orn, by refusing to appropriately sanction Defendant Clark for his actions.

### 1.  Ratification of Violations of Than Orn's Fourth Amendment Rights

A §1983 plaintiff may prevail against a municipality, under *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690-91 (1978), by proving "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). If the authorized policymakers "approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Bouman v. Block*, 940 F.2d 1211, 1231 (9th Cir. 1991) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

The City of Tacoma and TPD are liable under *Monell* based on the ratification theory for the finding of the Use of Deadly Force Review Board's that Officer Kristopher Clark's actions in using deadly force against Than Orn on October 12, 2011 were lawful and within policy.[146]  The Board's findings were explicitly approved by Chief of Police, Donald Ramsdell, who himself admitted during his deposition that his decision to approve the findings constituted an approval of those findings by TPD.[147]

---

[146] Cochran Dec. at ¶ 24, Ex. 23.
[147] Cochran Dec. at ¶ 11, Ex. 10, 44:23-25.

PLAINTIFFS' TRIAL BRIEF



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

**2. Violations of Than Orn's and his children's Fourteenth Amendment rights.**

Ninth Circuit precedent holds that "a parent who claims loss of the <u>companionship</u> and society of his or her child, or vice versa ... has a constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child ...." *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (citing *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *Kelson v. City of Springfield*, 767 F.2d 651, 653–55 (9th Cir. 1985)); *see also Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998) (noting that plaintiffs "may assert a Fourteenth Amendment claim based on the related deprivation of their liberty interest arising out of their relationship with [their deceased son]"). This is true even where the deprivation is incidental to the state's acts. *Ostling v. City of Bainbridge Island*, 872 F.Supp.2d 1117, 1127 (W.D.Wash. 2012).

Official conduct that "shocks the conscience" in depriving children or parents of that interest is cognizable as a violation of due process. *Wilkinson v. Torres*, 610 F.3d 546, 555 (9th Cir.2010) (citations omitted). Where "actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Id*. On the other hand, "where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id*.

Defendant Kristopher Clark had the time, and took the time, for actual deliberation and yet he used deadly force against Than Orn, leaving him critically injured and ultimately paralyzed. This was not a snap decision. Officer Clark ignored orders to stay in his vehicle. He deliberately created a roadblock in a situation that did not warrant the use of deadly force.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP | Page **42** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

And then, as the objective evidence shows, he fired at Than Orn as Orn's vehicle was passing Clark when there was no danger of imminent harm to Clark or to anyone else.  Further, Clark continued to fire at Orn's vehicle seven to eight more times as it was traveling away from Clark. In using such excessive force, Kristopher Clark materially diminished Than Orn's relationship with his children.  As TPD ratified such use of excessive force, the City of Tacoma is liable to Thalisa Orn and her siblings J.O. and C.O., for Clark's violation of their substantive due process interest in the companionship of their father, Than Orn.  *Ostling v. City of Bainbridge Island*, 872 F.Supp.2d at 1127.

### C.  Battery as to Kristopher Clark

Washington recognizes the state tort of battery by a law enforcement officer in an excessive force case. *Staats v. Brown*, 139 Wn. 2d 757, 780, 991 P.2d 615 (2000).  "Battery is an intentional tort; the tortfeasor must intend an offensive touching, and the plaintiff must show there was no consent to the touching."  Bundrick v. Stewart, 128 Wn. App. 11, 18, 114 P.3d 1204 (2005).

Here, Defendant Kristopher Clark intentionally shot plaintiff Than Orn multiple times hitting him in the neck, shoulder, and back, and thereby inflicting a harmful contact on Than Orn.[148]  There is no dispute that Than Orn did not consent to being shot.

### D.  Negligence as to City of Tacoma

"Claims of negligent law enforcement are not novel."  *Beltran-Serrano v. City of Tacoma*, 193 Wn.2d 537, 543, 442 P.3d 608, 611 (2019).  Washington courts have long

---

[148] Declaration of TPD Officer Kristopher Clark at ¶¶ 18-19.  Dkt. 92.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **43** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1   recognized the potential for tort liability based on the negligent performance of law enforcement

2   activities. *See, e.g.*, *Washburn v. City of Federal Way*, 178 Wn.2d 732, 310 P.3d 1275 (2013)

3   (negligent service of a protective order); *Chambers-Castanes v. King County*, 100 Wn.2d 275,

4   669 P.2d 451 (1983) (negligent failure to respond with police assistance in a timely manner);

5   *Mason v. Bitton*, 85 Wn.2d 321, 534 P.2d 1360 (1975) (negligent police vehicle chase); *Garnett*

6   *v. City of Bellevue*, 59 Wn.App. 281, 796 P.2d 782 (1990) (negligent infliction of emotional

7   distress for officers' harsh and offensive language in responding to a call that plaintiffs were

8   loitering). Indeed, such liability is consistent with the broad waiver of sovereign immunity for

9   municipalities under RCW 4.96.010.

10      In the case at hand, all the elements are met to establish the four essential elements for

11  a negligence claim: duty, breach, proximate cause, and resulting harm. *Pedroza v. Bryant*, 101

12  Wn.2d 226, 228, 677 P.2d 166 (1984); *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483

13  (1992); *Kennedy v. Sea-Land Serv., Inc.*, 62 Wn. App. 839, 856, 816 P.2d 75 (1991). The City

14  of Tacoma here was negligent in causing foreseeable harm in the course of TPD's interactions

15  with Mr. Orn. In *Beltran-Serrano*, the Washington Supreme Court found that the "core" of

16  plaintiff's negligence claim against the City of Tacoma "is that Officer Volk unreasonably

17  failed to follow police practices calculated to avoid the use of deadly force." *Beltran-Serrano*,

18  193 Wn.2d at 544. Plaintiffs may pursue both an intentional tort, such as a battery claim, as

19  well as negligence claims. *Id.* at 548. "Under Washington common law, the City owes a duty

20  to refrain from causing foreseeable harm in the course of law enforcement interactions with

21  individuals." *Id.* at 552.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **44** of **49**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

Plaintiff Than Orn was injured because of TPD's repeated flouting of its own policies, including TPD's improper pursuit of Mr. Orn, TPD's policy-violating "rolling roadblock," TPD's failure to remove its scene commander, Sgt. Morris, from the lead car during the pursuit, Officer Clark's improper use of his vehicle as a roadblock to stop Orn's vehicle which created a life-threatening point of confrontation with law enforcement, Officer Clark's defiance of dispatch commands to remain in his vehicle, and Officer Clark's decision to approach Orn's vehicle and fire ten to eleven bullets at Orn, further endangering the public in the direction of his range of fire.

Thus, Defendant City of Tacoma, through the policy-violating conduct of TPD officers, including Officer Clark, created the dangerous circumstances in which Plaintiff Than Orn was confronted with the unlawful use of deadly force. The City of Tacoma is liable for the negligent acts of its law enforcement officers by operation of *respondeat superior*, or vicarious liability. *Respondeat superior*, or vicarious liability, imposes liability on an employer for the torts of an employee who is acting on the employer's behalf within the scope of employment. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420. *Respondeat superior* is analytically distinct and separate from a cause of action for negligent hiring, retention, and supervision. *Id.* at 48. Defendant City of Tacoma was responsible for the actions of its agents and employees under the theory of *respondeat superior*. The doctrine of *respondeat superior* "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). Defendant City of Tacoma, through its employees, including the named individual defendant Kristopher Clark and the officers who engaged in a police pursuit of Than Orn, owed a duty to use reasonable care with

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **45** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

regard to its attempts to take Than Orn into police custody.  Defendant City of Tacoma, through

its employees, including the named individual defendant Kristopher Clark and the officers who

engaged in a police pursuit of Than Orn, violated that duty through the following activities,

including but not limited to, engaging in a police pursuit against policy, blocking all avenues

of exit against policy, and firing a weapon into the rear of a moving vehicle when the vehicle

and its occupant, Than Orn, did not pose an imminent threat of death of serious bodily injury

to any person.

### E. Damages

Plaintiffs intend to seek damages relating to Orn's injuries, subsequent medical

treatment, and pain and suffering.  Plaintiffs also seek damages for the loss of the parent child

relationship between Than Orn and his three children, J.O., C.O., and Thalisa Orn.  Finally,

Plaintiffs also intend to seek punitive damages against Defendant Kristopher for his willful and

malicious shooting of Than Orn.

Section 1983 was "intended to 'create a species of tort liability' in favor of persons

deprived of federally secured rights."  *Smith v. Wade*, 461 U.S. 30, 34, 103 S.Ct. 1625, 75

L.Ed.2d 632 (1983) (quoting *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 55 L.Ed.2d

252 (1978)).  Further, the common law of torts governs the recoverable damages for liability

under § 1983.  *Id.*  Accordingly, when the Supreme Court determined the requisite mental state

and conduct for a punitive damages award under § 1983, the Court looked to applicable tort

law concepts.  See *id.* at 38, 103 S.Ct. 1625.

In *Smith v. Wade*, the Court considered whether punitive damages could be awarded

only for intentionally malicious conduct or whether the district court properly instructed the

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **46** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

jury that it could award punitive damages "if the conduct of one or more of the defendants is shown to be a reckless or callous disregard of, or indifference to, the rights or safety of others." Id. at 33, 103 S.Ct. 1625. Focusing on the standards for punitive damages at the time of the enactment of § 1983, the Court concluded that federal and state courts agreed that punitive damage awards "did not require a showing of actual malicious intent; they permitted punitive awards on variously stated standards of *negligence, recklessness, or other culpable conduct* short of actual malicious intent." *Id.* at 45, 103 S.Ct. 1625 (emphasis added). "[W]e have frequently operated under the assumption that [a punitive damage] instruction is proper [in federal civil rights cases for oppressive conduct.]" *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005).

The facts presented in this case warrant the inclusion of a punitive damages jury instruction as a jury could find that Officer Clark's actions constituted gross negligence, willful or wanton misconduct, or a reckless disregard for the civil rights of the plaintiff: his improper and unlawful use of his patrol vehicle as a roadblock to stop a suspect who was neither assaultive nor life-threatening under TPD policies and the universally accepted continuum of force model; his defiance of repeated dispatch commands for officers to remain in their vehicles; his decision to fire 2-3 times at a vehicle that was passing him and was not an imminent threat of serious bodily harm or death to either Officer Clark or anyone else; his decision to continue firing 7-8 more times as the vehicle was traveling away from him, when neither he, nor anyone else was in imminent danger of serious bodily harm or death. These facts easily meet the threshold level sufficient to instruct the jury on the issue of punitive damages.

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  │ Page **47** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## IV.     CONCLUSION

Plaintiffs look forward to presenting their case when it is set to commence on November 23rd, 2020.

RESPECTFULLY Submitted this 30th day of October, 2020.

**PFAU COCHRAN VERTETIS AMALA, PLLC**

By   /s/ Darrell L. Cochran
    Darrell L. Cochran, WSBA No. 22851
    Thomas B. Vertetis, WSBA No. 29805
    Andrew S. Ulmer, WSBA No. 51227
    Alexander G. Dietz, WSBA No. 54842
    darrell@pcvalaw.com
    tom@pcvalaw.com
    aulmer@pcvalaw.com
    adietz@pcvalaw.com

*Attorneys for Plaintiffs*

**COCHRAN DOUGLAS, PLLC**

By   /s/ Loren A. Cochran
    Loren A. Cochran, WSBA No. 32773
    loren@cochrandouglas.com

*Attorney for Plaintiffs*

**LAW OFFICE OF THOMAS A. BALERUD**

By   /s/ Thomas A. Balerud
    Thomas A. Balerud, WSBA No. 19539
    tbalerud@balerudlaw.com

*Attorney for Plaintiffs*

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP  |  Page **48** of **49**



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## CERTIFICATE OF SERVICE

I, Andrew S. Ulmer, hereby declare under penalty of perjury under the laws of the United States of America that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jean P. Homan
Tacoma City Attorney's Office
747 Market Street, Suite 1120
Tacoma, WA 98402
jhoman@ci.tacoma.wa.us

Anne M. Bremner
Karen L. Cobb
Frey Buck, P.S.
1200 Fifth Ave, Suite 1900
Seattle, WA 98101
abremner@freybuck.com
kcobb@freybuck.com

**DATED** this 30th day of October, 2020

/s/ Andrew S. Ulmer
Andrew S. Ulmer
Associate Attorney

PLAINTIFFS' TRIAL BRIEF

3:13-cv-05974-MJP   |   Page **49** of **49**



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654
www.pcvalaw.com